## McGOWAN *v.* ELROY.

---

BILLS OF REVIEW; APPEALS; EQUITY JURISDICTION; LACHES; WILLS, PROBATE OF; EVIDENCE; LIFE ESTATES; WILLS, REVOCATION OF BY DEED.

1.  A bill of review lies either for errors of law appearing in the body of the decree, or for new matter arising or discovered after it has been rendered.

2.  *It seems* that where a bill of review is based on errors of law appearing in the decree, it may be filed without leave of court, but, when based upon new matter subsequent to the decree, leave must be applied for and granted.    When both grounds are joined in one bill, it can only be filed upon leave.

3. After a bill of review has been dismissed on its merits upon a general demurrer, it is too late for the respondents, on an appeal by the complainants from the decree of dismissal, to object that formal leave had not been given to file the bill of review.

4. A decree dismissing a bill of review will not be reversed upon the ground that the court below had no jurisdiction, where the original bill presented a subject-matter of a class over which equity has general jurisdiction, such as the cancelation of a deed, and where the defendant failed to question the jurisdiction of the court in any way before the passage of the decree. (Following *Tyler* v. *Moses,* 13 App. D. C. 428; *Slater* v. *Hamacher,* 15 App. D. C. 558; and *Smith* v. *Olcott,* 19 App. D. C. 61.)

5. Where in a litigation extending over about three years, after the passage of a decree setting aside a deed of land as having been obtained by the grantees by the exercise of undue influence, the grantees surrendered possession of the land as required by the decree, and then applied for and, after a contest, secured the probate of a previously executed will by which the grantor in the deed devised the same land to them, a bill of review by them to review the decree upon the ground of new matter arising subsequent thereto is properly dismissed because of their laches, but the dismissal should be without prejudice.

6. While the statutes in force in this District, regulating the probate of wills, provide no time within which probate shall be applied for, yet they contemplate that this shall be speedily done. (Construing D. C. Code, secs. 1635a and 830, 32 Stat. at L. 535, 545, chap. 1329.)

7. An unprobated will made subsequent to the act of Congress of June 8, 1898, providing for the probate of wills of real estate, is not admissible in evidence as a muniment of title.

8. *Quære,* whether under a will made prior to the passage of D. C. Code, devising specific parcels of real estate to two named devisees, together with all of the other real and personal estate possessed by the testatrix, but without words of inheritance, the devisees take a life estate only.

9. While at common law a conveyance of land previously devised, or a binding contract for conveyance by the testator, worked a revocation of the will, a conveyance of a title subsequently declared void would seem not to have had that effect.

10. Whether a conveyance of land declared void operated at common law to revoke a previous will is unimportant, in view of D. C. Code, sec. 1626 (31 Stat. at L. 1433, chap. 854), declaring the manner in which wills shall be revoked, and concluding, "any former law or usage to the contrary notwithstanding."

No. 1677.   Submitted October 8, 1906.   Decided November 7, 1906.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia, dismissing a bill of review which sought the review of a decree in a suit for the cancelation of a deed of land alleged to have been procured by undue influence, upon the grounds of error appearing in the decree and for new matter arising subsequent thereto.

*Modified and affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree dismissing a bill of review.

The original bill was filed by the appellees, Ella Elroy, John H. Sims, and Annie Gill, against the appellants on April 19, 1902.

Complainants alleged that they were the children of two deceased sisters of Susan Turner, who died in December, 1901, intestate and without husband or children surviving her. That on February 10, 1854, Henry L. Turner, deceased, the then husband of Susan Turner, with other grantors, conveyed to Repper and Heffernan, in trust for said Susan Turner, lot 4 in square 227 in the city of Washington. That said trustees died prior to the decease of Susan Turner, without having made any conveyance to her of the legal title, which therefore descended to their heirs at law; and the heir at law of one of them is therefore made a party defendant. That the defendants Harry J. and Jesse A. McGowan are the children of a deceased half sister of Susan Turner. That by a paper purporting to be a conveyance the said Susan Turner, on March 30, 1901, conveyed the said lot in fee simple to said defendants Mc Gowan.

That at the time of said pretended conveyance the said Susan Turner was about eighty-three years of age, and had become, by reason of physical infirmities resulting from great age, and other bodily infirmities produced by paralysis and other diseases, a person of extreme mental weakness, and was incapacitated thereby from understanding the nature of any acts or deeds done or performed by her. That the defendants McGowan, by reason of long continued residence with said Susan Tur-

ner, and their relationship, had acquired great influence and control over her; and, being young men of intelligence and business capacity, had been acting in a fiduciary and confidential capacity for said Susan Turner, and attending to and controlling all of her affairs, and, enjoying her implicit confidence. That by reason of their long residence with her, and their fiduciary and confidential relations, they had acquired undue influence over said Susan Turner, which she had not the mental or physical power to resist, and thereby fraudulently obtained from her the execution of said conveyance, which they had prepared for her. That complainants entered into possession under said conveyance, and are attempting to sell the same. The bill further alleged that, prior to the said conveyance, the said defendants, under like circumstances and by like means, procured the execution by said Susan Turner of a paper writing purporting to be a will, wherein said land and all of the personal property belonging to her were devised and bequeathed to them.

The prayers of the bill were that the deed and will be delivered up and canceled; that defendants be restrained from selling the premises or creating any lien thereon, and from offering said will for probate; that receivers be appointed to take possession of the premises, and collect and preserve the fruits thereof; and that defendants be required to render an account of all the rents and revenues received by them, and pay the same over to the receiver to be appointed.

The defendants entered a demurrer to the bill. No objection was made to the jurisdiction of the equity court.

This demurrer was sustained to so much of the bill as set out the execution of the will and sought to cancel the same and restrain its probate. Complainants filed an amended bill, omitting the said allegations, and otherwise substantially repeating those of the original one.

Defendants again demurred, but their demurrer was overruled, and they were granted time to answer the amended bill.

The defendants answered, expressly denying the physical and mental weakness and disability of said Susan Turner, the existence of any fiduciary relations, and the exercise of any undue influence; and answering that she was competent to

make the said deed and executed the same voluntarily, out of love and affection for defendants, in accordance with her often repeated declarations of intent so to do; and that the deed was prepared at her special request. They also denied that Susan Turner died intestate, and averred that she left a will dated February 17, 1901, and that she died on January 11, 1902, instead of in December, 1901, as alleged in the bill.

Evidence having been taken, a final decree was rendered February 10, 1905, vacating the conveyance set up in the bill, commanding the defendants to surrender the possession of the premises to the complainants, and referring the cause to the auditor to ascertain and report such sum as will compensate the complainants for the use and occupation of the premises by defendants from the 11th day of January, 1902. Costs were taxed against the complainants, and execution ordered therefor.

On February 16, 1905, the defendants filed a petition for rehearing. This recited the order for possession and alleged: (1) That the record shows that there is on file in the office of the register of wills a paper writing purporting to be the last will of Susan Turner, in which the lot described in the bill is devised to defendants. (2) That the equity court is without jurisdiction to determine whether said paper writing is the last will of Susan Turner, the probate court having exclusive jurisdiction thereof. (3) That if the defendants shall be required to yield possession of the premises and account to the complainants for the revenues thereof, and if the said paper writing be sustained in the probate court as the last will of Susan Turner, the effect of the decree rendered and to be rendered on the auditor's report would stand as a judgment against the said defendants as to their ownership of said property; whereas, by the judgment of the probate court these defendants would be the sole and absolute owners of the premises, and as such entitled to the revenues thereof, and complainants would be without remedy. (4) That a petition for the probate of the said will has been filed in the probate court. The prayer was that the decree be modified so as to strike out so much of the same as awarded possession of the premises and ordered an

account to be taken of the revenues; or else that the decree be suspended until there shall have been a judgment by the probate court as to the validity of said will.

This petition was overruled March 24, 1905.

On April 23, 1906, defendants filed a paper entitled: "Petition for Leave to File a Bill of Review."

This paper, in regular form of a bill, alleged that on January 17, 1901, the said Susan Turner executed the following will:

Washington, D. C., January 17, 1901.

I Susan Turner do hereby bequeath to my nephews H. J. and J. A. McGowan my house and lot, situated in square number two hundred and twenty-seven and known as part of lot number four in the District of Columbia, together with all other real estate and personal property I possess, my nephew H. J. McGowan to be executor.

her.

Susan x Turner.

mark

Witnesses:

    Michael Hayden.

    Harry T. Leach.

    James D. Stoner.

It was then further alleged that she executed a conveyance to them of the said lot on March 29, 1901; that she died January 11, 1902, and from the date of her death petitioners were in possession of said property; that on February 6, 1902, the said will was filed in the office of the register of wills. The petitioners then proceed to set out the allegations of the original bill of complaint, the demurrer and answer thereto, and the proceedings thereon to and including the final decree.

It was further alleged that on February 16, 1905, one of the petitioners named in said will as executor thereof filed his petition praying that said will be admitted to probate; and on the same day petitioners filed the petition for rehearing (hereinbefore set out), and which was denied. It is further alleged that they noted an appeal from said decree, but abandoned the

same because of the enormous expense of procuring and print-
ing a transcript of the record, and it was docketed and dis-
missed in the court of appeals.  That thereafter, on June 14,
1905, a writ of assistance was issued out of the equity court, and
complainants were put in possession.  That petitioners vacated
the premises on June 1, 1905.  That on June 26, 1905, a
caveat was filed in the probate court by the respondents, contest-
ing the validity of said will.  That the issues framed were
whether the said Susan Turner, at the time of the execution
thereof, was of sound and disposing mind and capable of exe-
cuting a valid deed or contract; and whether the execution was
procured either by the fraud or the undue influence of petition-
ers, or either of them, or of any other person or persons.  That
a trial of such issues was had in the probate court on March 8,
1906, resulting in a verdict sustaining the will; and on April
23, 1906, a judgment was entered on said verdict, establishing
said will and admitting it to probate.  That by virtue of said
judgment petitioners are and have been since the death of Su-
san Turner, the sole and absolute owners of said premises;
and respondents, who never had any right or title thereto, are,
by virtue of the decree aforesaid, in possession of the same.
That petitioners are wholly without means to pay or raise the
money to discharge the costs of said cause.  That all of the
respondents, save John H. Simms, are nonresidents, and it
would not be possible for petitioner to recover from them any
rents and revenues that they may receive.  It is also averred
that the decree of February 10, 1905, is erroneous, and ought to
be reversed and set aside for error apparent on the record, in-
asmuch as it appears therefrom that, even if complainants
ever had any rights in the premises, they had a plain, adequate,
and complete remedy at law.

The prayers were for leave to file the bill of review, to the
end that said decree may be reviewed and reversed,—especially
in so far as it decreed possession of the premises and the ac-
count of the rent thereof.  An injunction was asked, enjoining
respondents from doing anything further to carry said decree
into execution pending action hereon.  Receivers were asked to
take possession of the property and conserve the rents and rev-

enues thereof; and that a rule to show cause be issued to the respondents.

No formal entry of leave to file the petition was made, but it was filed, and on the same day the court entered a rule to show cause why the prayers of the bill should not be granted.

April 27, 1906, the respondents entered a demurrer to the bill, because the same showed no case entitling them to the relief prayed and leave to file the bill of review. May 4, 1906, the bill was dismissed, the decree reciting that "the cause came on to be heard upon the rule to show cause and the answer thereto by way of demurrer to the petition."

The petitioners, doubting their right to appeal as a matter of right, made application for the allowance of a special appeal from the order dismissing their petition for review, which was granted May 14, 1906, and the same has been regularly prosecuted.

*Mr. Charles T. Hendler* for the appellants.

*Mr. Edmund Burke* and *Mr. Charles Bendheim* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. A bill of review lies either for errors of law appearing in the body of the decree, or for new matter arising or discovered after it has been rendered. *Purcell* v. *Miner* (*Purcell* v. *Coleman*) 4 Wall. 519, 521, 18 L. ed. 459, 460; *Ballard* v. *Searls,* 130 U. S. 50, 55, 32 L. ed. 846, 848, 9 Sup. Ct. Rep. 418.

It seems that, where the first ground only is relied on, the bill may be filed without obtaining leave; but, where the second ground is alleged, leave must be applied for and granted. And both grounds may be joined in one bill, in which case it can only be filed upon leave. *Ricker* v. *Powell,* 100 U. S. 104, 109, 25 L. ed. 527, 528.

The bill in this case joins the two grounds, and it is contended, on behalf of the appellees, that no appeal can be entertained

from the order dismissing it, because no leave to file was grant-
ed. This is upon the assumption that the order appealed from
is one refusing leave to file. In our opinion, however, the decree
is one, substantially, of dismissal upon the merits. The peti-
tion was in the form of a bill of review setting out the com-
plainant's entire case, and, while no formal order of leave was
entered, it was permitted to be filed as such, and a rule issued to
show cause why its several prayers, including one for the ap-
pointment of a receiver, should not be granted. The respond-
ents entered a general demurrer, which was sustained, and the
rule was then discharged, with costs. It is too late now to object
that no special order of leave to file the paper as a bill of review
was entered.

Other objections to the bill as being multifarious and sup-
ported by an insufficient oath need not be discussed.

2. The only error alleged as appearing in the body of the
decree sought to be reviewed is that the equity court had no
jurisdiction. The contention is that it is apparent from the al-
legations of the original bill that the complainants had a plain,
adequate, and complete remedy at law by action of ejectment.
No objection to the jurisdiction was made by the pleading, nor
was suggested on the hearing. Whether sufficient or not to show
that there was no adequate remedy at law, the bill was for the
cancelation of a deed, presenting, therefore, a subject-matter
of a class over which equity has always had jurisdiction. Con-
sequently, the equity court was under no obligation to consider
the question of jurisdiction, of its own motion, upon the failure
of the defendants to suggest, or call it in question in any manner.
Nor would an appellate court thereafter, on direct appeal, be
compelled to entertain the suggestion, though it might be within
its discretion to do so of its own motion even. Certainly, under
ordinary circumstances,—as, where the subject-matter of the bill
is of a class within the general jurisdiction of equity,—it will
rarely, if ever, exercise such discretion. *Tyler* v. *Moses,* 13
App. D. C. 428, 443; *Slater* v. *Hamacher,* 15 App. D. C. 558,
569; *Smith* v. *Olcott,* 19 App. D. C. 61, 73; *Southern P. R.
Co.* v. *United States,* 200 U. S. 341, 349, 50 L. ed. 507, 510,
26 Sup. Ct. Rep. 296.

3. It remains to consider whether the bill ought to have been sustained on the alleged ground of new matter arising after the decree and which could not have been put in evidence in the original cause. As has been set forth fully in the statement of the case, this new matter consisted of the probate of a will of Susan Turner, had after the rendition of the decree. This will, made some months before the conveyance annulled by the decree, devised the premises in question to the appellants. It appears to have been filed in the office of the register of wills on February 6, 1902, by the executor named therein, who is one of the appellants, but no petition for its probate was filed until February 16, 1905, six days after the entry of the decree in the original cause. Having been made after the enactment of the act of Congress approved June 8, 1898, providing for the probate of wills relating to real property, the unprobated will could not have been offered in evidence, as an additional title on the part of the defendants, in the original case. As will be seen in the statement of the case, also, the original bill sought to obtain cancelation of this will for fraud and undue influence practised in obtaining its execution, and to restrain proceedings for its probate, but the court sustained the defendant's demurrer to the allegations relating thereto, and they were omitted in the amended bill, on which the case went to hearing. The will, having been subsequently admitted to probate, after trial upon a caveat filed by the appellees, vests in the appellant the title to the premises which they have been compelled to deliver into the possession of the appellees by the terms of the decree, which they, for that reason, seek now to review and vacate. Moreover, by the same decree, the appellees recovered of them the value of the rents of the premises from the time of the death of Susan Turner to the time of the decree, when ascertained by the auditor.

The case is a novel one, and its conditions appeal strongly to a court of equity. Notwithstanding, we are constrained to deny the relief sought in this proceeding. Equity must be called into activity by the exercise of due diligence. In this respect the appellants have failed. The original bill attacking the title claimed by the appellants under the deed was filed April 19,

1902, and the final decree was not rendered until Feburary 10, 1905.

While the statutes regulating the probate of wills provides no time within which probate shall be applied for, yet they contemplate that this shall be speedily done. Code, secs. 1635a and 830 [32 Stat. at .L. 535, 545, chap. 1329].

The will was promptly filed with the register of wills, but the appellants, both of them devisees, and one of them the executor named in the will, took no steps to have it probated until after the decree canceling the deed was rendered. Ample time was afforded them to procure probate during the nearly three years in which this litigation was carried on; and, doubtless, the hearing thereof would have been further postponed upon application to give reasonable time therefor, if necessary. Instead, they deliberately elected to rest their claim of title upon the deed alone, and were only stirred into activity in the matter of the probate of the will by the unsuccessful result of that election. As they could not have proved title under the will until after its probate, they are not necessarily concluded by such election, in respect of their ultimate rights thereunder, by reason of the decree canceling their deed. And to prevent their possible conclusion by the dismissal of the bill of review, the decree therefor may be modified so as to show that it is without prejudice to them. Any right that they may have by virtue of the subsequently established will may, therefore, be hereafter asserted in such proceedings as they may be advised to take. Whatever incidental injury they may sustain through their failure to promptly probate the will, will be the consequence of their laches therein.

4. In view of the possibility of further proceedings in prosecution of their rights under the will, it is proper to briefly consider two other questions raised by the appellees in support of the finality and conclusiveness of the decree sought to be reviewed.

(1) The first of these is that by the terms of the will of Susan Turner, as stated in the bill of review, nothing more than a life estate is vested thereby in the appellants. There is no occasion to interpret the will in that respect,—a question that

may hereafter become necessary in any other proceeding thereunder,—because the devisees are living, and their estate for life, at least, is conceded.

(2) The second point is that the deed, having been made subsequent to the execution of the will, necessarily operates as a complete revocation of the will, notwithstanding its cancelation for fraud and undue influence practised in its procurement.

It seems to have been an established rule of the common law that a subsequent conveyance of land previously devised, or a binding contract for conveyance by the testator, worked a revocation of the previous will, although the same estate may become reinvested in the testator by reconveyance or release made during his life. See *Walton* v. *Walton,* 7 Johns. Ch. 258, 269, 11 Am. Dec. 456, where the English authorities were fully reviewed by Chancellor Kent. Those authorities do not cover the precise question here involved, namely, the effect of a conveyance declared void and of no effect. On the other hand, the proposition that a conveyance of the title, subsequently declared void, does not operate as a revocation of a previous will, seems to be reasonable, and has the support of weighty authority. *Hawes* v. *Wyatt,* 3 Bro. Ch. 156, 160; 1 Redf. Wills, p. 344.

In the language of Lord Thurlow in the case above cited: "Whoever orders it to be delivered up declares it to be no deed." The question is an unimportant one, however, in view of the provision of our Code, which declares the manner in which wills shall be revoked, and concludes with the words, "any former law or usage to the contrary notwithstanding." Code, sec. 1626. [31 Stat. at L. 1433, chap. 854]. This is a substantial readoption of the early Maryland statute then in force in the District of Columbia. Of course, a valid conveyance by the testator of lands before demised necessarily operates as a virtual revocation *pro tanto,* not by way of revocation of the will, however, but because there is no estate left in the testator to pass under the will.

For the reasons given, the decree dismissing the bill of review will be modified so as to read without prejudice to the appellants and, so modified, will be affirmed, with costs. It is so ordered.                    *Modified and affirmed.*