IN THE MATTER OF THE ESTATE OF LEWIS R. ARNOLD, ALSO KNOWN AS LEWIS RACHARD ARNOLD, AND L. R. ARNOLD.

No. 3328

February 13, 1941.                    110 P.(2d) 204.

*A. W. Ham* and *Ryland G. Taylor*, for Petitioner.

*Leo A. McNamee* and *Frank McNamee, Jr.*, for Contestants.

## OPINION

By the Court, DUCKER, C. J.:

On April 23, 1931, Lewis R. Arnold executed his holographic will making his wife, Frances Lillian Arnold, his sole beneficiary. On October 7, 1938, she obtained a divorce from him. She sought no alimony in the action. The sole heirs at law of the deceased are a brother and sister.

Shortly after the death of Lewis R. Arnold, respondent produced the will and petitioned the lower court that letters of administration with the will annexed, upon the estate, be issued to her. The said brother and sister, Frank G. Arnold and Mollie Hiatt Arnold, filed objections. The objections were overruled and the will was by order of the lower court admitted to probate. A motion for a new trial was denied. Hence their appeal.

There are two assignments of error and they may be considered together because they present the single question: Is the will the valid holographic will of the decedent? Appellants contend that it is not, because it was revoked by the divorce. The court found, inter alia, that there was no community property belonging to the decedent and the said Frances Lillian Arnold at the time of the divorce; that subsequent to the 23d day of April 1931, and prior to the 7th day of October 1938, there was no property settlement agreement entered into

between the said Frances Lillian Arnold and decedent; that the will had never been revoked and was the good and lawful will of decedent.

Section 9912 N. C. L. provides: "No will in writing shall be revoked unless by burning, tearing, canceling or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence, or by his direction, or by some other will or codicil in writing, executed as prescribed by this act; but nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator."

The will was not revoked in any of the modes stated above. Appellants contend, however, that by reason of the last sentence in that section the will was revoked by implication of law.

■ The statute contains in the last sentence the doctrine of implied revocation of a will which has long existed. The reasons for the rule and the extent of its recognition are thus stated in 4 Kent's Commentaries 421-2: "They (implied revocations) are founded upon the reasonable presumption of an alteration of the testator's mind, arising from circumstances since the making of the will, producing a change in his previous obligations and duties, * * *. There is not, perhaps, any code of civilized jurisprudence in which this doctrine of implied revocations does not exist and apply when the occurrence of new social relations and moral duties raises a necessary presumption of a change of intentions in the testator."

The reasons for the rule of implied revocations is thus stated in Baacke v. Baacke, 50 Neb. 18, 69 N. W. 303, 304: "The doctrine of revocation by implication of law is based upon a presumed alteration of intention arising from the changed conditions and circumstances of the testator, or on the presumption that the will would have been different had it been executed under the altered circumstances."

■ What will be found sufficient to give rise to a

reasonable presumption of alteration of intention by a testator must be determined from the facts of each particular case.  But by the great weight of authority the general rule has been established that a divorce alone after the execution of a will by a testator will not work an implied revocation.  Card v. Alexander, 48 Conn. 492, 40 Am. Rep. 187;  Cunningham's Succession, 142 La. 701, 77 So. 506;  Baacke v. Baacke, 50 Neb. 18, 69 N. W. 303; Charlton v. Miller, 27 Ohio St. 298, 22 Am. Rep. 307;  In re Jones' Estate, 211 Pa. 364, 60 A. 915, 69 L. R. A. 940, 107 Am. St. Rep. 581, 3 Ann. Cas. 221;  In re Brown's Estate, 139 Iowa, 219, 117 N. W. 260;  68 C. J. 841 and cases cited in note 50 on that page.

██ We are in accord with the rule thus established and this case seems to fall within it.  The record before us presents nothing but a divorce from which an implied revocation may be inferred.  It is not enough.  A strong circumstance against the theory of implied revocation is that the will, from the time of the divorce to the death of the testator, remained in his possession a period of eleven months.  This principle should therefore apply: "Where a man retains a revocable instrument with full opportunity of revoking it, and does not revoke it, there is a strong presumption that he wishes it to stand."  In re Jones Estate, supra [211 Pa. 364, 60 A. 922, 69 L. R. A. 940, 107 Am. St. Rep. 581, 3 Ann. Cas. 221].

Defendant had ample time and opportunity to revoke the will and it is reasonable to believe if he had wished to revoke it he would have done so.

█ This situation is always regarded as persuasive against a presumption of altered intention of the testator.

In Card v. Alexander, supra, the court said: " * * * That he lived nearly five years after the divorce making no change in his will, and the conclusion is well nigh irresistible that he did not intend to deprive his former wife of the provision he had made for her."

In Charlton v. Miller, supra, it was said: "The probable correctness of this view [no revocation by reason of divorce] is strenghtened by the fact that while he might easily have expressly revoked the will, though not in his possession, and wherever it might be, either before or after the divorce, for some reason, satisfactory to himself, it was never done." See Sharpe's Estate, 15 W. N. C. 419.

Any considerable lapse of time from a divorce to the death of the testator, without change in a will executed prior to the divorce, is stressed by annotators as of great weight against any presumption of altered intention on his part. Notes, 69 L. R. A. 940, 942, 943; 25 A. L. R. 52.

■ We so regard it, particularly where, as here, the testator had notice of the divorce.

Implied revocations are not favored and this court is committed to a strict construction of that part of section 9912 N. C. L. dealing with such revocations. We said: "In considering the provisions of Section 9912, N. C. L., we must keep in mind that revocations by implication are not favored. In re Adler's Estate, 52 Wash. 539, 100 P. 1019, 1023. And, also, that a proviso such as is found in Section 9912 should be strictly construed. 59 C. J. 1089." In re Walters' Estate 60 Nev. 172, 104 P. (2d) 968, 972.

There are cases in which a divorce, coupled with a property agreement settlement, have been held to work a revocation of a will but we need not discuss them because this case does not fall within that class. The court found, as previously stated, that no property settlement was entered into between decedent and the beneficiary under the will.

■ But counsel for appellants contend that, notwithstanding the deceased and his then wife did not, prior to the divorce, enter into any formal property settlement agreement, that there was a property settlement by operation of law which had the effect of revoking

the will. Without intimating that a property settlement agreement coupled with a divorce may be sufficient to revoke a will previously executed, by implication of law, we hold that there was in this case no settlement by operation of law that could possibly have such result. The contention that there was a property settlement by operation of law is in turn based on the fact that there was a waiver of alimony, and the fact that there was no community property. Had alimony been asked for and allowed and a community property award made to the wife, she would had received no more than what was her own under the law. Giving a wife her own as a matter of right could afford no basis for a reasonable inference that the testator did thereby alter his intention to make her the object of his bounty. In Cunningham's Succession, supra, it was held that a divorce and settlement of community rights did not revoke a will previously made by the husband. In respect to the settlement the court said [142 La. 701, 77 So. 510]:

"By the act of settlement of the community, [she] received only what was hers. Her acceptance of $4,500 in payment of all rights, title and interest she had or might have had in the assets of the community was not a renunciation of any bounty which her husband (for she was still his wife) had chosen to bestow or might choose to bestow on her out of those same assets. Her husband might still have continued to cherish her, notwithstanding the separation."

The case of In re McGraw's Estate, 228 Mich. 1, 199 N. W. 686, 37 A. L. R. 308; Id. 233 Mich. 440, 207 N. W. 10, 42 A. L. R. 1283, relied on by appellants, represents a decidedly minority opinion and does not influence us.

The judgment and order denying a new trial should be affirmed.

It is so ordered.