Morris F. LUFF, Appellant,

v.

Willard J. LUFF and John W. Slacks, Appellees.

Willard J. LUFF and John W. Slacks, Appellants,

v.

Morris F. LUFF, Appellee.

Nos. 14493, 14496.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 14, 1959.

Decided March 19, 1959.

644

Wilbur K. Miller, Circuit Judge, dissented in part.

Messrs. Richard L. Merrick and John W. Jackson, Washington, D. C., for appellant in No. 14493 and appellee in No. 14496. Mr. John B. Evans, Alexandria, Va., was also on the brief for appellant in No. 14493.

Mr. R. Sidney Johnson, Washington, D. C., with whom Mr. J. Richard Earle, Washington, D. C., was on the brief, for appellees in No. 14493 and appellants in No. 14496.

Before WILBUR K. MILLER, BAZELON, and WASHINGTON, Circuit Judges.

BAZELON, Circuit Judge.

These cross-appeals bring to this Court for the second time a dispute between Morris F. Luff, Willard J. Luff and John W. Slacks, former partners of the dissolved Willmore Engineering Company. The dispute relates to a partnership claim against the Government which was satisfied, after the dissolution, by the payment of a $375,577.37 arbitration award under private congressional action. 68 Stat. A106, A109. After the partnership had ceased doing business, Morris asserted that Willard and Slacks abandoned whatever interest they had in the claim, that payment of the claim was due to the sole efforts of Morris and his wife, and hence only they were entitled

to the proceeds. Thereupon, in February 1955, Willard and Slacks brought this suit. The trial court granted partial summary judgment, declaring, in effect, that Willard and Slacks retained their partnership interest in the claim. On appeal from that judgment, we affirmed and a petition for certiorari was denied by the Supreme Court. 98 U.S. App.D.C. 211, 233 F.2d 702, certiorari denied 1956, 352 U.S. 882, 77 S.Ct. 99, 1 L.Ed.2d 79.

When the case returned to the District Court, Morris sought to invoke an arbitration agreement entered into on June 19, 1954, between Morris, Willard and Slacks in contemplation of the imminent congressional action. This agreement provided for the appointment of one Hegarty as one of the arbitrators to be named by Willmore Engineering Company under the private bills, and as arbitrator "on all matters concerning our former and present relationships pertaining to Willmore Engineering Company." [1] Before the partial summary judgment was granted, Hegarty had stated that Morris and his wife Ruth were the co-partners. Thereupon Willard and Slacks, through their attorney, informed Hegarty that he had no authority under the arbitration agreement to resolve disputes between the partners and additionally put in question the validity of Hegarty's appointment as one of the arbitrators. After the partial summary judg-

ment was affirmed by this Court, Hegarty purported to make a formal award which recognized Morris, Willard and Slacks as co-partners, but which compensated Morris over and above his interest as "damages to Morris Luff caused by the breach of contract by the Government." The District Court refused to recognize the award on the ground that the effect of the partial summary judgment was to render the arbitration agreement inoperative for the settlement of any disputes between the parties and was operative only in connection with the arbitration of the Government claim as provided in the private bills.

The case then proceeded to trial upon the judge's pretrial ruling that the "only issues are * * * the proper distribution of the net proceeds among the partners * * *." The court, finding that there existed no other practical method for determining the respective interests of the partners in the partnership, concluded that these interests should be fixed in accordance with the time each partner had spent on the project for which the partnership had been organized—the production of winches for transport vessels for the United States Maritime Commission.[2] The court also found that:

"The passage of the relief bills which ultimately produced the money was achieved through practically the sole efforts of Morris F. Luff.

[1] The arbitration agreement read as follows:
"Washington, D. C.
"June 19, 1954
"We, The Undersigned, for the purpose of finally resolving, settling, and liquidating all our rights, interests and obligations in the partnership known as Willmore Engineering Company of Washington, D.C., hereby mutually agree to arbitration, and we hereby irrevocably appoint, delegate, authorize and empower Eugene D. Hegarty of Annandale, Virginia, as our arbitrator to hear, investigate, and arbitrate a final determination for all and each of us in our names and places on all matters concerning our former and present relationships pertaining to Willmore Engineering Compa-

ny, and as the arbitrator for Willmore Engineering Company on the Board of Arbitrators to be created under a pending bill in Congress, H.R. 7258, in the event it is enacted and becomes law.
"Signed
/s/ Morris F. Luff
/s/ Willard J. Luff
/s/ John W. Slacks
"Appointment as Arbitrator under terms set forth in the agreement stated above is hereby accepted:
"/s/ Eugene D. Hegarty"

[2] Except with regard to the allowance of $100,000 to Morris for legislative services, no challenge is made here to this basis of fixing the relative interests of the partners.

* * * for which he should be compensated over and above his partnership interest. Reasonable compensation for these services is $100,000."

Judgment was entered accordingly.

In No. 14493, Morris appeals from the District Court's ruling that questions relating to the effect of the arbitration agreement are res judicata under the partial summary judgment. We think the District Court was clearly right. The impulse for that judgment was Morris' insistence that Willard and Slacks were no longer partners, and Willard's and Slacks' insistence that they had rescinded the arbitrator's authority to settle matters between the partners. In undertaking to decide who was entitled to share in the proceeds of the claim, the court necessarily found that the arbitration agreement was inoperative. Whether or not this decision was correct is not now subject to debate. Cf. Treinies v. Sunshine Mining Co., 1939, 308 U.S. 66, 60 S.Ct. 44, 84 L. Ed. 85; Angel v. Bullington, 1947, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832.

In No. 14496, Willard and Slacks appeal from the District Court's allowance of $100,000 to Morris, over and above his partnership interest, as compensation for services to the partnership in procuring payment of the claim against the Government. This allowance was not based upon any express agreement between the parties. And Morris could not have relied on any implied agreement with Willard and Slacks, since his efforts in securing payment of the claim against the Government were undertaken under his announced belief that they were not partners in the claim. Hence we assume that the compensation allowance to Morris is based on the theory of quantum meruit which the court distilled from what it described as "a mass of conflicting, disgruntled testimony."

Payment for services rendered in obtaining legislation is under many circumstances to be regarded as of doubtful propriety. Contingent fee arrangements, conditioned on the obtaining of favorable legislation, are unenforceable in the courts. See McNeill v. Nevius, 1955, 88 U.S.App.D.C. 49, 187 F.2d 81; cf., Le John Mfg. Co. v. Webb, 1955, 95 U.S.App.D.C. 358, 222 F.2d 48. Here, however, there was no advance arrangement, contingent or otherwise; in fact, Morris thought he was working solely for himself and his wife, although it now turns out that his work has also inured to the benefit of his partners. Nor does the record suggest that improper methods were utilized in obtaining the legislation. Under these circumstances, and inasmuch as the partners' respective interests were determinded purely on the basis of the time each partner had spent on the work of the partnership, we find no objection to the allocation to Morris by the court of reasonable compensation for the time he spent in his legislative services. But we think that the amount allowed was excessive. The private bill contained the proviso—

"* * * That no part of the amount appropriated in this Act in excess of 10 per centum thereof shall be paid or delivered to or received by any agent or attorney on account of services rendered in connection with this claim, and the same shall be unlawful, any contract to the contrary notwithstanding * * *."

Whether or not Morris was technically an "agent" or "attorney," we think the intent of Congress was that at least 90 per cent of the amount appropriated for the claim go to the beneficial owners in their capacity as such, and that no more than 10 per cent be allotted for "services rendered."

Accordingly, the allowance of $100,000 to Morris for compensation over and above his partnership interest is set aside and the case is remanded for further proceedings in accordance with this opinion.

No. 14493—Affirmed.

No. 14496—Reversed and remanded.

WILBUR K. MILLER, Circuit Judge (concurring in part and dissenting in part).

I concur in that portion of the opinion which holds the partnership in effect. I dissent, however, from that portion of it which allows compensation to Morris Luff for his lobbying activities, in addition to the revenue he would derive from his interest in the partnership.

Even if Morris Luff thought he was acting for himself, the fact is he was acting for the partnership of which he was a member. In the absence of an agreement, he is not entitled to extra compensation, in my opinion, for time spent in activities which were not among the purposes the partnership was formed to accomplish.