Willard J. LUFF, Appellant,

v.

Ruth K. LUFF, Appellee.

No. 19311.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 17, 1965.

Decided Feb. 4, 1966.

Petition for Rehearing En Banc
Denied March 24, 1966.

Leventhal, Circuit Judge, dissented.

Mr. R. Sidney Johnson, Washington, D. C., for appellant.

Messrs. John W. Jackson and Darryl L. Wyland, Washington, D. C., for appellee.

Before FAHY, McGOWAN and LEVENTHAL, Circuit Judges.

FAHY, Circuit Judge:

The question is whether the last will and testament of Morris F. Luff, deceased, of whom appellant, Willard J. Luff, is a surviving brother and one of several heirs at law, was impliedly revoked. The will, dated April 7, 1953, provided that testator's entire estate should go to Ruth K. Luff, appellee, who then was his wife. Thereafter they separated. Some five years after the separation she sued for and obtained an absolute divorce

upon the ground of five years consecutive separation without cohabitation. A property settlement agreement entered into between the parties during the pendency of the divorce proceeding was made a part of the decree of divorce.[1] There was no child, and neither remarried.

The will was found in testator's apartment after his death. At his request it had been sent to him by his former wife after their divorce. She offered the will for probate. Appellant filed a caveat, and the issue as to the validity of the will came on for trial before judge and jury. Appellant relied entirely upon the divorce and property settlement as impliedly revoking the will. Appellee introduced considerable testimony tending to show that decedent should not be held to have intended to revoke the will. At the close of all the evidence the motion of appellee for a directed verdict in her favor was granted, the will thus being given effect. We reverse, being of opinion that the divorce with property settlement revoked the will by implication of law. In so holding we follow the majority rule, which we think has the support of better reasoning.

We discuss first whether our Code provisions respecting revocation, in effect during the relevant times, set forth in the margin,[2] allow revocation implied in law. At one time these provisions were thought not to do so. See McGowan v. Elroy, 28 App.D.C. 188, and Morris v. Foster, 51 App.D.C. 238, 278 F. 321, cert. denied, 259 U.S. 582, 42 S.Ct. 586, 66 L.Ed. 1074.[3] However, in Pascucci v. Alsop, 79 U.S.App.D.C. 354, 147 F.2d 880, decided in 1945 with an opinion by Chief Justice Groner, joined by Associate Justices Justin Miller and Edgerton, this court reconsidered and departed from Morris v. Foster. Following the common law the court held that where an unmarried testator, without child by a former marriage, executed a will which contained no provision for any child of a subsequent marriage, and remarried, followed by birth of a child, the will was impliedly revoked. The basis for the doctrine thus approved is that such change in the testator's condition or circumstances gives rise to a legal presumption of an intention inconsistent with a previously executed will.

Appellee contends, however, that the common law did not extend to an implied

1. This agreement set forth in some detail a division of particular items of personal property and provided that from the monies in the hands of the wife she would pay the husband the sum of $7,000 and give him the deed to a cooperative apartment. The agreement also provided that the wife "shall not claim any interest as Wife, widow, heir, next of kin or successor" in the property of the husband and that she would execute any papers necessary or convenient to enable him, his heirs, executors, administrators or assigns "to hold or dispose of his property, free and clear of all rights of hers which she might have had except for this covenant."

2. D.C. Code § 19–103: Form of will—Witnesses—Alteration—Revocation.
 All wills and testaments shall be in writing and signed by the testator, or by some other person in his presence and by his express directions, and shall be attested and subscribed in the presence of the said testator by at least two credible witnesses, or else they shall be utterly void and of no effect; and, moreover, no devise or bequest, or any clause thereof, shall be revocable otherwise than by some

other will or codicil in writing or other writing declaring the same, or by burning, canceling, tearing, or obliterating the same by the testator himself or in his presence and by his direction and consent; but all devises and bequests shall remain and continue in force until the same be burned, canceled, torn, or obliterated by the testator or by his direction in the manner aforesaid, or unless the same be altered or revoked by some other will, testament, or codicil in writing, or other writing of the testator signed in the presence of at least two witnesses attesting the same, any former law or usage to the contrary notwithstanding. (Mar. 3, 1901, 31 Stat. 1433, ch. 854, § 1626.) (Repealed by Pub.L. No. 183, 89th Cong., 1st Sess., § 8. And see n. 6, *infra*.)

3. Not mentioned in the opinion was the earlier one of Mr. Justice Barnard of the Supreme Court of the District of Columbia, Estate of Mary D. Heyl, 30 Wash. L.Rep. 296 (1902), holding that a change in the circumstances of a testatrix, by the birth of a child, by implication revoked her will executed prior to the birth.

revocation by reason of divorce with a property settlement; and we find no case in the early common law, when divorce was rare, contrary to this contention. Moreover, courts have not infrequently stated that the principal grounds for implied revocation at common law were a subsequent marriage of a woman or a subsequent marriage of a man with birth of a child. But this does not end our inquiry.

The doctrine of implied revocation due to change of condition or circumstances came to be recognized in a number of states by statute.[4] Many state statutes, after specifying as does our Code the usual means of revoking a will, *supra* note 1, go on to provide, "but nothing in this section will prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator."[5] While this language did not appear in our Code when this case arose,[6] nevertheless, as we have seen, this court in Pascucci v. Alsop read the common law doctrine into our decisional law. It is urged, however, that since our Code did not contain explicit statutory authorization of revocation by implication the circumstances under which this occurred in this jurisdiction must be limited to those found in early common law decisions. We do not agree. Once the doctrine was accepted, as in Pascucci v. Alsop, we think it should not be limited to the particular circumstances which gave rise to it, if at this period of our history changes in marital relations in other respects, here divorce and property settlement, which were rarely known at the time of the early cases, bring the situation within the rationale of the doctrine. *Accord*, Rankin v. McDearmon, 38 Tenn.App. 160, 270 S.W.2d 660. The doctrine itself, as distinct from the occasions which originally gave rise to it, is not limited in its application solely to those occasions. And where implied revocation has been recognized, and the circumstances of its application left to the courts to decide, as here, we turn to decisional and statutory law in other jurisdictions for guidance as to whether a divorce with property settlement is such change in condition or circumstances as brings the doctrine into play.

The trend of statutory law in other jurisdictions is to include changes other than such as were present in *Pascucci*, including marriage alone and divorce alone.[7] And the weight of decisional law is now to the effect that when a married man makes provision in his will for his wife, and is thereafter divorced, with a property settlement between them, such change in the condition and circumstances of the parties impliedly revokes the previously executed will in favor of the wife. The cases are numerous. While some are of an early period in our history, the weight of authority persists to the present time. Lansing v. Haynes, 95 Mich. 16, 54 N.W. 699; Wirth v. Wirth, 149 Mich. 687, 113 N.W. 306; In re Hall's Estate, 106 Minn. 502, 119 N.W. 219, 20 L.R.A.,N.S., 1073; In re Battis, 143 Wis. 234, 126 N.W. 9; In re Martin's Estate, 109 Neb. 289, 190 N.W. 872; Younker v. Johnson, 160 Ohio St. 409, 116 N.E.2d 715; Caswell v. Kent,

---

4. See Rees, "American Wills Statutes," 46 Va.L.Rev. 856, 880–881 (1960).

5. *Id.* at 881, n. 600.

6. However, on January 1, 1966, Pub.L. No. 183, 89th Cong., 1st Sess. (Sept. 14, 1965) took effect and Title 18, D.C.Code, § 109, (replacing the former § 19–103 and other provisions), does now explicitly include the words authorizing revocation "by implication of law." S.Rep.No. 612, 89th Cong., 1st Sess. 10–11 (1965); H.R. Rep. No. 235, 89th Cong., 1st Sess. 8–9 (1965).

7. The English Wills Act of 1837 by Article XIX provides that "no will shall be revoked by any presumption of an intention on the ground of an alteration in circumstances," but simultaneously by Article XVIII the Act provides that "every will made by a man or woman shall be revoked by his or her marriage," with an exception not pertinent to our discussion. Wills Act, 1837, 7 Will. 4 and 1 Vict., c. 26, §§ 19, 20 at 3 Jarman, *Wills* App. B, at p. 2085 (8th ed. 1951). For state statutes see Rees, "American Wills Statutes," 46 Va.L.Rev. 856, 885 (1960) and the Model Probate Code § 53.

158 Me. 493, 186 A.2d 581. In Caswell v. Kent, decided in 1962, it is stated:

> The majority rule clearly rests on the assumption based upon common knowledge and experience that it is so rare and so unusual for a testator under these circumstances [divorce and property settlement] to desire or intend that his divorced spouse should benefit further under his will, that it is not improper or unreasonable to require that such a testator make that extraordinary desire and intention manifest by a formal republication of his will or by the execution of a new will.

Caswell v. Kent, supra at 582–583.

In a Memorandum Opinion of the late Chief Justice Bolitha J. Laws of our District Court in Estate of Hale Plahn Daugherty, Admin. #69,504, cited at 1 Mersch, Probate Practice in the District of Columbia § 672 (2d ed. 1952), it is said:

> "It appears to be the weight of authority that a divorce coupled with a property settlement would revoke a will previously made. Such a settlement is said to be plainly inconsistent with the provisions of the will." [8]

Thus we find support for our position that we should not limit application of the doctrine to such cases as Pascucci, but appropriately should apply it in the circumstances of this case.

Respectable authority to the contrary is not lacking. Hertrais v. Moore, 325 Mass. 57, 88 N.E.2d 909; and see Baacke v. Baacke, 50 Neb. 18, 69 N.W. 303; Mosely v. Mosely, 217 Ark. 536, 231 S.W.2d 99, 18 A.L.R.2d 695; Codner v. Caldwell, 156 Ohio St. 197, 101 N.E.2d 901. The reasoning of the contrary rule is stated as follows by the Massachusetts court in Hertrais v. Moore, 88 N.E.2d at 912:

> It would be a serious matter to invalidate a will because of a supposed change in intention on the part of a testator not given formal expression by him. Our conclusion avoids the difficulties faced in those jurisdictions where the statutes permit the adoption of a contrary view, where the revocation is not presumptive but absolute, and evidence, not amounting to a republication, cannot be received of a testator's actual intent to continue his will in force, and where the prevailing standard seems to be what a reasonable testator would be deemed to have intended. [citations omitted] If the changes relied upon by the respondents were held to achieve a revocation implied in law, other changes can be imagined which with equal plausibility might be urged to have similar effect. Persons who have drawn wills or who are to draw wills are not now to be exposed to the risk that, in the present circumstances and perhaps others, the courts might decree revocation notwithstanding that such persons do not avail themselves of the easy means afforded by statute for accomplishing revocation by their own intentional acts.

The commentators recognize the division of authority; [9] but the majority support the position we now take. Mersch refers to the majority view as that of the "American courts." [10]

8. "In the case at bar," the Chief Justice continued, "as there was neither a general property settlement nor a transfer of any part of the husband's estate to the wife the reasoning of the cases mentioned does not apply."

9. 2 Page, *Wills* § 21.101 (Bowe-Parker Revision 1960); Atkinson, *Wills* § 85, at 431 (2d ed. 1953); Annot., 18 A.L.R.2d 697, 705–710 (1951); Thompson, *Wills* § 176 (3d ed. 1947); Mersch, "Implied Revocation of Wills Revised in the District of Columbia," 33 Geo.L.J. 182 (1945); Durfee, "Revocation of Wills by Subsequent Change in the Conditions or Circumstances of the Testator," 40 Mich. L.Rev. 406, 412–413 (1942); Note, 52 Harv.L.Rev. 332 (1938); Evans, "Testamentary Revocation by Divorce," 24 Ky. L.J. 1 (1935); Graunke and Beuscher, "The Doctrine of Implied Revocation of Wills by Reason of Change in Domestic Relations of the Testator," 5 Wis.L.Rev. 387 (1930).

10. Mersch, *op. cit. supra* note 9, 188–189.

The doctrine of implied revocation is so ancient and widespread that the question simply comes down to the nature of the changed condition or circumstances which will bring it into operation. This court in *Pascucci* applied it to a subsequent marriage and birth of a child. We apply it to a subsequent divorce coupled with a property settlement, because that also creates such a change both in status and responsibility as to raise the presumption of change in intention which lies at the basis of the doctrine. A will in favor of a wife is a means by which a husband makes provision for her as wife. When there is a divorce and a formally agreed property settlement, as here, both the wifely status and the testamentary provision are replaced by such changed condition and circumstances that the law may well imply an intention no longer to give effect to the provision for the wife contained in the will.[11]

 The intention to revoke is imputed and conclusive. It may not be overcome by evidence adduced subsequent to the death of the testator and then relied upon as indicative of an intention that the will should be effective. Inquiry into the state of mind of the testator is confined to that imputed to him by the divorce and property settlement. Lansing v. Haynes, supra; Wirth v. Wirth, supra; In re Battis, supra; In re Martin's Estate, supra; Caswell v. Kent, supra. Contra, Card v. Alexander, 48 Conn. 492; In re Jones' Estate, 211 Pa. 364, 60 A. 915, 69 L.R.A. 940; In re Arnold's Estate, 60 Nev. 376, 110 P.2d 204.

At common law certain changes in the condition and circumstances of the testator worked a revocation by implication, and it was formerly held that this was prima facie only, and open to rebuttal by proof that the testator intended his will to remain, notwithstanding the change in his circumstances. The rule, however, by all modern authorities, is that the presumption of law arising from the changed conditions is conclusive, and no evidence is admissible to rebut it.
\* \* \*

In re Hall's Estate, 106 Minn. 502, 119 N.W. 219, 220. This is the sounder rule, illustrated by the present case. There was evidence of strained relations between testator and appellant, one of his heirs. It was also urged that when at the divorced husband's request his former wife sent the will to him he kept it in a bureau drawer in his apartment where it was found after his death, and that this indicated an intention not to revoke it. Testator is not available to give his version of either of these matters. He has a sister and other brothers besides appellant; and he may have asked his former wife to send the will to him so that it would no longer be in her control. He may have retained it undestroyed as a memento of happier days, or because of indecision. It is safer to rely upon the divorce and carefully composed adjustment of property between the parties, by which the former husband was relieved of further legal obligation to his former wife with respect to his property. While he remained of course free to make additional provision for her if he desired to do so the law should require this to be done anew in a manner provided by statute for valid testamentary disposition.

Reversed and remanded for further proceedings not inconsistent with this opinion.

LEVENTHAL, Circuit Judge (dissenting):

I cannot follow the path taken by my brethren. The point of departure for all of us becomes for me the point of return —the word of the testator executed in full accordance with the statute, witnessed by two adult witnesses. No word written down by ordinary man is more solemn than his last will and testament. The governing legislation not only pro-

---

11. Divorce itself is not enough. See text and cases referred to in 2 Page, *op. cit. supra* note 9, at 521–522.

vided the requirements for the writing to be effective as a testament, but carefully provided that one who wished to revoke his will might do so by written document or destruction of the prior will. 19 D.C.Code § 103 (1961 ed.). Even the untutored who do not know of the statutory provisions are generally aware that their solemn word stands unless destroyed or amended.

Almost as venerable as the legislative enactment—the statute of frauds and the statute of wills—is the judicial encroachment or exception established by the common law doctrine of implied revocation of wills.[1] In 1945 Pascucci v. Alsop [2] overturned prior decisions in this jurisdiction and accepted implied revocation as a common law doctrine, applicable to a man who subsequently married and had children under the common law rulings prior to the Revolution and the reception statute.[3] This common-law approach need not be limited to those examples. Change in legal rules adapted to changing times and the changing needs of society is a hallmark of the common law, including common law exceptions to legislative enactments.

Any new content for the doctrine of implied revocation of wills as a judicial exception must, however, satisfy the purpose and policy of that doctrine. In *Pascucci* the court had available the almost overwhelming presumption that the deceased did not intend his property to devolve in accordance with his testament, in the absence of republication or a new document after acquiring a wife and child. No similar injustice or presumption exists in the case of divorce and property settlement. Unlike wives and children, the common law heirs, possibly remote, are not especially favored by the law. Nor can it be assumed that to the testator they represent a clear choice in preference to the former wife. That choice is even less clear if we are acting not out of deference to hoary precedent, but out of an assumption as to the needs of modern times. In modern society divorce is not only more frequent than it used to be, but increasingly is sought notwithstanding considerable and genuine affection by couples who realize that they have become incompatible,[4] and that their divorce will at least provide the possibility of taking up life anew.

Doubtless many, perhaps most, divorced men desire to disinherit their wives. Doubtless many do so, some even with ceremonial bonfires and whoops of joy. What we are considering, however, is the probable intent of those divorced men who do not destroy their wills. It is fair to observe that people tend to do the things they really want to do, and that inaction generally signifies contentment or at worst indecision.

The procedural record leaves us without findings as to testator's actual intent.[5] Nevertheless, it is fair to con-

---

1. See generally 2 Page, *Wills*, 471–558 (Bowe-Parker Rev., 1960). The theory of implied revocation evolved in the ecclesiastical courts (p. 471).

2. 79 U.S.App.D.C. 354, 147 F.2d 880 (1945).

3. Judge Laws' memorandum opinion in In Estate of Hale Plahn Daugherty, 1 Mersch, Probate Practice in the District of Columbia (2d ed. 1952) § 672, holds that divorce alone is not sufficient to revoke a will. He states that the weight of authority finds revocation in a divorce coupled with a property settlement, but specifically avoids a statement that this would be the rule in the District of Columbia. On the contrary, he points out that there is nothing in *Pascucci* "which indicates the rule of the common law had been extended" beyond marriage, for a woman, and marriage and the birth of issue, for a man, as constituting grounds for revocation of a will by implication.

4. In the District of Columbia the grounds for divorce include voluntary separation without cohabitation for one year (five years prior to the passage of Public Law 89–217 on September 29, 1965). D.C. Code § 16–904. This is in effect an acceptance of the ground of incompatibility, with the safeguard that the parties will not act in undue haste.

5. The brother introduced no evidence whatever as to actual intent of the deceased, but sought judgment of revocation as a matter of law, regardless of actual intent. The former wife contended that the will was operative (1) as a matter of law,

clude that this record suggests a man who was virtually indifferent to if not estranged from his brother,[6] but still sentimental, if not loving, in his thoughts of his former wife.[7] This is relevant precisely because it occurs often enough among divorced men—and presumably still more often among divorced men who do not revoke their wills—that I am not sufficiently convinced of the probable intention of the testators to override their own writings.

The doctrine whereby courts can define the changed circumstances constituting implied revocation is hardly an essential of modern life. In England where the doctrine arose it was abolished more than 100 years ago by statute.[8] Some American states have followed this course.[9] In the array of values underlying legal rules certainty is no longer accorded the pre-

eminence that was proclaimed for it in the last half of the 19th century. But if there is any field of law where certainty commands a premium, it is the law of wills. And the doctrine of implied revocation as a judicial exception necessarily connotes areas of uncertainty as to what will be held to constitute a change of circumstances sufficient to constitute revocation.[10] It is striking that the State of Maine, which provides the leading precedent for revocation by implication in case of divorce with property settlement, nevertheless fails to find revocation in what seems to me the more compelling *Pascucci* situation, of subsequent marriage and children.[11]

Accepting the doctrine of implied revocation of wills as a judicial exception, it is properly confined, in my view, to such change of circumstance, like the *Pascucci*

regardless of the intent of the deceased, and (2) in the alternative, because it represented the actual intent of the deceased. The trial court directed a verdict for the wife.

6. Cf. Luff v. Luff, 105 U.S.App.D.C. 366, 267 F.2d 643 (1959), litigation involving a dispute between testator and his brother, appellant here, over proceeds of a large partnership claim against the Government.

7. His bureau drawers were stocked with bow ties which his wife had made out of the same material as her dresses, mementos of their days as a "team." Photographs of her abounded in his apartment. Also in his apartment was the will sent him by his former wife one year after the divorce. He died a year later at age 72. They had been married for twelve years prior to the separation.

8. 7 Wm. IV & I Vict., C. 26, § 20 (1837).

9. Rees, *American Will Statutes*, 46 Va.L. Rev. 856, 880 (1960).

10. There is a split of opinion concerning revocation of wills by implication from divorce plus property settlement:
 (a) For commentators approving, see: Thompson, *Wills*, § 176, p. 277 (3d ed. 1947); *Note*, 50 Colum.L.Rev. 531, 534 (1950) (approving a rebuttable presumption).
 (b) For those disapproving see: 2 Page, *Wills*, § 21.101 (Bowe-Parker Rev. 1960); Durfee, *Revocation of Wills by Subsequent Change in the Condition or*

*Circumstances of the Testator*, 40 Mich. L.Rev. 406, 417 (1942).
 The court opinions look both ways. But in most cases approving implied revocation from divorce and property settlement the courts rely on statutes expressly providing for revocation of wills through changes in testator circumstances. These statutes were apparently read as a signal of legislative welcome to implied revocation. They are more suggestive of such a signal than our new Code, discussed *infra*, p. 243.

11. See Caswell v. Kent, 158 Me. 493, 186 A.2d 581 (1962).
 The court there indicated that since subsequent marriage and issue does not revoke a will by implication, in view of its prior decisions, and since that statute contemplates some revocation by implication, unless that provision is mere surplusage, it is proper to find revocation by implication in case of divorce and property settlement. Without discussing further this curious inversion of values, our jurisdiction at least does recognize revocation by implication in the *Pascucci* situation. It is therefore not necessary to reach out to the situation of divorce and property settlement in order to provide content for the new statutory provision recognizing revocation by implication. Our new statutory provision is given full recognition by construing it as a codification of the doctrine announced and applied in *Pascucci* without making it a point of departure for extension of *Pascucci*.

242

situation, as provides a clear presumption that revocation accords with the testator's intent, and the conviction that revocation is necessary to avoid injustice. In other situations, the premium of certainty bids us pay the price of an occasional injustice where a man forgets his outstanding will or is negligent or inattentive. Even changes of great significance in normal testamentary expectancy may fall short of implied revocation. Allen v. Heron, 81 U.S.App.D.C. 298, 157 F.2d 707 (1946).

There is a difference between the permissible approach of a court and of a legislature to the task of defining the circumstances that constitute revocation of a will by implication of law. There is much to be said for the kind of legislation passed in some states, and proposed in § 53 of the Model Probate Code, that subsequent divorce revokes a testamentary provision in favor of the spouse.[12] That is a legislative-type choice, one that is designed to put all parties on notice that henceforth, in case of divorce, all outstanding wills are revoked and new testaments are required. The authors if the Model Probate Code, while approving the philosophy that divorce constitutes such a change of circumstance as to warrant setting aside prior wills, expressly note their view that this approach should not be adopted by a court in the absence of specific statutory command. They state in their comment to section 53 that a purely judicial doctrine of implied revocation "introduces an undesirable element of uncertainty into the question of the validity of a duly executed will."

The judicial or common law approach is properly limited to finding revocation of a will only where necessary to effectuate probable intention and prevent injustice. By these standards divorce is not sufficient for revocation. A man who wishes to disinherit a divorced wife has the option to do so in case of a property settlement, or wherever disinherit-

ance does not violate the decree or an agreement. He can accomplish any intention of disinheritance by following the simple procedures outlined in D.C.Code § 19-103. A man who intends to disinherit a divorced wife is more likely to speak up to his counsel at once, and have it taken care of. A man who has decided not to disinherit his divorced wife is less likely to bring the matter up even assuming he is aware of the little-known statutory technique of republication of a will. He may be hesitant to expose and enlarge the wound to his ego by admitting the depth of his affection for the former wife. He may have the hope that a new and more reciprocating object of his affection may yet appear on the scene.

The majority opinion indicates agreement with the ruling of Judge Laws (supra, note 3) that mere divorce does not work an implied revocation. I question whether the addition of a property settlement is so significant a difference in degree that the legal consequences should be drastically different. If the decisive factor is that the property settlement terminates all obligation to his former wife, that may also be established by a decree of divorce even in the absence of property settlement. If the termination of obligations was an immediate bargained-for right of consequence, he would presumably have taken advantage of his freedom from testamentary obligation to make a new will.

These matters are more properly for legislative than judicial determination, a determination that may depend significantly on a factual inquiry. In practice there may be all kinds of reasons for a property settlement solution to a divorce problem which do not bear significantly on the problems of implied revocation—tax reasons; reasons of pride; perhaps a simple recognition that both spouses really made property and perhaps salary contributions to their total wealth. The obligation of the deceased to transfer certain property, as a minimum, during

12. See Atkinson, *Wills*, § 85, p. 432 (2d ed. 1953).

his life does not negative a desire to leave other property after death, and more than the minimum, at least in the absence of new responsibilities.

There is no significance in the 1965 revision of the District of Columbia Code providing a new section 18–109, effective January 1, 1966, even assuming it may be taken into account for a case involving prior events. It provides that a will "may not be revoked, except by implication of law," otherwise than by destruction or a later writing. This exception merely flags, in the large type of the statute rather than the annotation, the existence of a doctrine of revocation by implication. As to the content of what constitutes revocation by implication of law, the Reviser's Note makes plain that the revision was merely an acceptance of *Pascucci,* which in turn merely accepted revocation by implication from a subsequent marriage and children as a common law rule that had emerged before our Revolution. Along with *Pascucci,* the Reviser cited Allen v. Heron, *supra,* applying "the usual common-law rule that a will in favor of a wife is not revoked by the birth of a child" and not finding that revocation "would probably reflect the testator's wishes."

There is relatively little time that a legislature concerned with awesome problems of national policy can be expected to devote to the private affairs of residents of the District of Columbia. Hence I would not shrink from expansion of common law doctrine to avoid injustice. A property settlement may be more conducive than continuing alimony to the start of a new life with another wife. But when the husband has not found a new spouse and has not destroyed his solmen will and testament, I do not find a clear-cut presumption or injustice which impels me to mandate intestacy in the absence of a legislative expression that this is the consequence of a property settlement.

I respectfully dissent.