ANN CASWELL
*vs.*
NEWELL E. KENT

Penobscot. December 17, 1962

*Thomas E. Needham,* for the Plaintiff.

*Morris G. Pilot,* for the Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ. DUBORD, J., was present at the argument but retired before rendition of decision.

WEBBER, J. On report. The late James G. Kent married Ann Caswell in 1946. In 1947 Mr. Kent executed a will devising an interest in his real estate in these terms: " * * * and one-third part in common and undivided thereof to my wife, Ann Kent, * * * ." The remainder of his estate was left to Newell E. Kent, son of the testator by a former marriage. About a year later Mrs. Kent divorced

her husband and resumed her maiden name. The divorce was accompanied by a voluntary and complete property settlement involving a transfer by Mrs. Kent to the testator of all her interest in his real estate and a lump sum payment of cash to her. Mr. Kent died ten years later without having changed the terms of his will.

These facts raise the issue, of novel impression in Maine, as to whether the provision in the will for the benefit of the former spouse was revoked by operation of law as the result of the divorce accompanied by a property settlement. The Probate Court determined that revocation did result and an appeal from the decree of that court was reported for our determination upon an agreed statement of facts.

R. S., Chap. 169, Sec. 3 provides: "A will executed under the provisions of section 1 is valid until it is destroyed, altered or revoked by being intentionally burnt, canceled, torn or obliterated by the maker, or by some person by his direction and in his presence, or by a subsequent will, codicil or writing executed as a will is required to be; *or revoked by operation of law from subsequent changes in the condition and circumstances of the maker.*" (Emphasis supplied.)

The precise issue raised in the instant case has been passed upon in a number of jurisdictions. Decisions have usually rested upon the form of the applicable revocation statute. A number of courts have felt constrained to decide against implied revocation because of the total absence of the statutory authority found in the italicized portion of our statute as above set forth. Of particular interest is an examination of the case law in those jurisdictions which have a statute which in substance and effect is like our own.

At the outset it may be noted that courts have held with almost complete uniformity that divorce alone, unaccompanied by a property settlement, will not produce a revoca-

tion by operation of law. When, however, the divorce is accompanied by a property settlement, a great majority of cases hold that there arises under a statute similar to ours a conclusive presumption that the testator intended a revocation of the testamentary provision for the divorced spouse. *Lansing* v. *Haynes* (1893), 95 Mich. 16, 54 N. W. 699; *Wirth* v. *Wirth* (1907), 149 Mich. 687, 113 N. W. 306; *In Re Bartlett's Estate* (1922), 190 N. W. (Neb.) 869 (reversing prior decision in 189 N. W. (Neb.) 390); *In Re Martin's Estate* (1922), 190 N. W. (Neb.) 872; *Pardee* v. *Grubiss* (1929), 34 Ohio App. 474, 171 N. E. 375; (cf. *Sutton* v. *Bethell* (1953), 116 N. E. (2nd) (Ohio App.) 594); *Younker* v. *Johnson* (1954), 160 Ohio St. 409, 116 N. E. (2nd) 715; *In Re Battis* (1910), 143 Wis. 234, 126 N. W. 9; *In Re Kort's Estate* (1952), 260 Wis. 621, 51 N. W. (2nd) 501; *Johnston* v. *Laird* (1935), 52 P. (2nd) (Wyo.) 1219. In Illinois it has been held that even in the absence of statutory authority for implied revocation, a divorce accompanied by the payment of lump sum alimony will revoke a will naming the divorced spouse as sole beneficiary. *Gartin* v. *Gartin* (1938), 296 Ill. App. 330, 16 N. E. (2nd) 184. Without doubt, as already noted, the result in most states depends on the form of the statute. 52 Harv. L. Rev. 332. However, in *Rankin* v. *McDearmon* (1953), 270 S. W. (2nd) (Tenn.) 660, the court held in the absence of statutory authority that under the common law of Tennessee a divorce and property settlement would raise a conclusive presumption of revocation. See Anno. 18 A. L. R. (2nd) 699, 705.

Some of the reasons underlying the rule of conclusive presumption are to be found in the cases cited above. In the leading case of *Lansing* v. *Haynes, supra,* at page 701 of 54 N. W. the court said: "To hold the will unrevoked under these circumstances would be repugnant to that common sense and reason upon which law is based. I do not

think the common law is so unbending as to lead to this result. 'The reason of the law is the essence and soul of the law.' * * * The natural presumption arising from these changed relations is the reasonable one, and the one which in law implies a revocation. ·The question is not to be controlled by a possible presumption, but by the reasonable presumption. * * * Such disposition of his property (by testamentary provision for former spouse continued unchanged after divorce and property settlement) would be unusual, and contrary to common experience." In a divided opinion, the Ohio court in *Younker* v. *Johnson* (1954), 160 Ohio St. 409, 116 N. E. (2nd) 715, was satisfied that a divorce and property settlement operated to produce a complete destruction of the legal relations of the parties and their consequent obligations and duties to each other, that the changed circumstances are pregnant with a very strong intent to annul provisions of the will benefiting the divorced spouse, that the testator might justly conclude that any claim of the divorced spouse upon his estate and bounty had been fully discharged, and that the changed conditions are of a nature which naturally implies a different intent respecting the former spouse as the object of his bounty. The opinion in *Johnston* v. *Laird, supra,* states at page 1222 of 52 P. (2nd) : "The things which naturally prompt a man to make a will in favor of his wife are his regard and affection for her and the obligation which he may feel to provide for her comfort and support after he has gone. These elements cease to exist when the parties separate." The majority rule clearly rests on the assumption based upon common knowledge and experience that it is so rare and so unusual for a testator under these circumstances to desire or intend that his divorced spouse should benefit further under his will, that it is not improper or unreasonable to require that such a testator make that extraordinary desire and intention manifest by a formal republication of his will or by the execution of a new will.

Only one case has been called to our attention which reaches a contrary result even though the statutory authority for revocation by operation of law is substantially like our own. In *Hertrais* v. *Moore* (1949), 325 Mass. 57, 88 N. E. (2nd) 909, the court had for consideration facts essentially like those in the instant case. Mass. Gen. Laws, Chap. 191, Sec. 8 provides the methods by which a will may be expressly revoked and concludes with the following language: "or by subsequent changes in the condition or circumstances of the testator from which a revocation is implied by law." In seeking to determine what the legislature may have intended by its use of the quoted language, the court deemed itself restricted by the legislative history of the act. In connection with a revision of the statutes in 1834, the commissioners had reported that they contemplated that implied revocation could occur only as at common law, upon the marriage of a woman or upon the marriage of a man and the subsequent birth of a child. The court concluded that the legislature must have intended that no other changes in condition and circumstances would produce revocation by operation of law within the meaning of Sec. 8. The opinion frankly admits that in so saying it has rendered the quoted portion of the statute meaningless surplusage since another section, Chap. 191, Sec. 9, fully and completely provides for the two situations which under the English common law resulted in an implied revocation. At page 912 of 88 N. E. (2nd), the court stated the argument which is advanced in support of the minority rule: "Persons who have drawn wills or who are to draw wills are not now to be exposed to the risk that, in the present circumstances and perhaps others, the courts might decree revocation notwithstanding that such persons do not avail themselves of the easy means afforded by statute for accomplishing revocation by their own intentional acts."

If we were to attempt to apply the Massachusetts rule in this state, we would at once be faced with the practical im-

plications resulting from two decisions of our court interpreting the provisions of R. S., Chap. 169, Sec. 3. In 1889 our court held in *Emery, Applt.*, 81 Me. 275, that the statute did *not* produce a revocation by operation of law in the case of the subsequent marriage of a testatrix. The court reasoned that the basis for the common law rule, that is that after marriage a woman could neither make, alter or revoke a will, no longer exists. At page 277 of 81 Me. the court said: "Reason is the soul of the law, and when the reason of any particular law ceases, so does the law itself." In 1945 the Maine court in reliance upon the same principle held in *Clarissa D. DeMendoza, Applt.*, 141 Me. 299, that the marriage of a man followed by the birth of a child would *not* revoke a prior will. Here again the court was satisfied that since statutes now provide for the widow and children who may be omitted from the will, the reason for the common law rule no longer exists. These two decisions had the same practical effect that Sec. 9 of Chap. 191 of the Mass. Gen. Laws had upon Sec. 8 as to the remaining significance and operation of Sec. 8. In both cases the two ancient common law bases for implied revocation were removed and eliminated from the operation of the statute. This leads directly to the question as to when and under what circumstances the statute will have any remaining efficacy.

We deem it significant that the legislature has allowed the language of R. S., Chap. 169, Sec. 3 to stand unchanged for many years after this judicial interpretation. We are not disposed, as was the Massachusetts court, to treat the statutory language as mere surplusage if meaning can be given to it. If there exist situations to which the statute should properly apply, it should be given its reasonable and intended force and effect and not be repealed by judicial fiat or left to operate in a vacuum. See comment on *Hertrais* v. *Moore* (1949); 325 Mass. 57, 88 N. E. (2nd)

909, in 30 B.U. L. Rev. 270. If there is any "subsequent change(s) in the condition and circumstances of the maker" of a will which should properly and realistically produce a revocation by operation of law, the change wrought by divorce and a complete property settlement is such a one.

Although, as we have noted, the majority rule treats the statute as giving rise to a *conclusive presumption* of revocation, there has been some suggestion that the presumption should be *rebuttable* in order to afford opportunity to present evidence of the continued desire and intention of the testator to retain the divorced spouse as a beneficiary. The writers of several articles in legal periodicals have supported the concept of the rebuttable presumption. 34 B.U. L. Rev. 395; 50 Colum. L. Rev. 531; 5 Wis. L. Rev. 387; 40 Mich. L. Rev. 406. In the case of *In Re Hall's Estate* (1909) 119 N. W. (Minn.) 219, the court, interpreting a statute essentially like our own in its application to facts similar to those in the instant case, concluded that to limit the application of the statute to the (a) marriage of a woman and (b) the marriage of a man and the subsequent birth of issue would be unrealistic. The court said at page 220 of 119 N. W.: "To restrict the rule to such cases would narrow and unduly circumscribe its purpose." The court concluded that the rule of implied revocation "appears to us more in accord with the reason and basis of the law, in harmony with the elementary rule of right and wrong, conflicts with no equitable or substantial right of the woman in such case, and is opposed only by a strict adherence to some of the older views on the subject, based, however, upon the commendable purpose of sustaining the directions of a person respecting the disposition of his property, left in the form of a solemnly executed will, who by reason of his death is no longer able to speak for himself or give further orders or directions in that behalf." The court elected on balance to declare a revocation on these facts but gave no

positive affirmation that it deemed the presumption *conclusive*. There is at least an intimation that circumstances could arise in which the court would permit the introduction of rebutting evidence.

Although we recognize the force of the arguments which have been made in support of a rebuttable presumption, we are satisfied that the majority rule has much to commend it. Even though a conclusive presumption has the force and effect of an absolute rule of law, it may be that unnecessary confusion has been created by dealing with the subject matter in terms of presumptions. What is really involved is the legal consequence of the existence of certain facts. When these facts are present, the statute automatically produces certain results and revocation occurs, not presumptively, but by operation of law. This seems to us to have been the concept in the mind of the court in *In Re Martin's Estate* (1922), 190 N. W. (Neb.) 872, cited *supra*. The distinction was noted in *In Re Battis* (1910), 143 Wis. 234, 126 N. W. 9, cited *supra*. See discussion of origins of rule in 5 Wis. L. Rev. 387. On balance we think the adoption of a rule that divorce and property settlement produce an absolute and irrebuttable statutory revocation as to the divorced spouse will eliminate uncertainty and unnecessary litigation and will put the divorced testator on notice that affirmative action must be taken on his part if he desires to continue the divorced spouse as a beneficiary. We are convinced that incidents of such desire and intention will be rare indeed.

We note with interest that the compilers of the Model Probate Code believed that divorce should be made the *sole* producing cause of a testamentary revocation implied from a change of condition and circumstances. See 34 B.U. L. Rev. 395 cited *supra;* 34 Conn. Bar Journal 413.

We distinguish the following cases which appear to have been governed by the particular form of the controlling rev-

ocation statute, in no case like our own: *In Re Brown's Estate* (1908), 139 Iowa 219, 117 N. W. 260; *Succession of Cunningham* (1918), 142 La. 701, 77 So. 506; *In Re Nenaber's Estate* (1929), 55 S. D. 257, 225 N. W. 719; *Ireland v. Terwilliger* (1951), 54 So. (2nd) (Fla.) 52; *Moseley* v. *Moseley* (1950), 231 S. W. (2nd) (Ark.) 99; *In Re Patterson's Estate* (1924), 64 Cal. App. 643, 222 P. 374; *Pacetti* v. *Rowlinski* (1929), 169 Ga. 602, 150 S. E. 910; *In Re Darrow's Estate* (1949), 164 Pa. Super. 25, 63 A. (2nd) 458; *Robertson* v. *Jones* (1940), 345 Mo. 828, 136 S. W. (2nd) 278; see *In Re Crane's Estate* (1936), 6 Cal. (2nd) 218, 57 P. (2nd) 476. We note that in *Nutt* v. *Norton* (1886), 142 Mass. 242, 7 N. E. 720, where revocation was implied from the marriage of a testator and subsequent birth of his child, the presumption was deemed conclusive.

In summation, the rule we announce will, we believe, afford requisite protection to the ordinary testator who after divorce accompanied by a property settlement no longer owes or recognizes any legal obligation to his former spouse. He will be safeguarded against illness and incapacity or that oversight or lapse of memory which may prevent or delay his attention to the revision of his will. He will have reasonable time and opportunity to reform and replan the testamentary disposition of his estate in the light of the changed circumstances. On the other hand, in the rare and unusual situation in which he desires to continue the divorced spouse as an object of his bounty and a beneficiary under his will, he can readily employ the relatively easy methods of republication of his former will or the execution of a new will. Even though we deplore the apparent increase in marriage failures, we think this rule more nearly accords with the realities of life in our time and gives meaning and effectiveness to the applicable statute.

The Probate Court having determined correctly that the will in the instant case was revoked as to the provisions made for the benefit of the appellant, the entry will be

*Appeal denied.*

*Decree of Probate Court affirmed.*