ESTATE OF Roscoe H. LILES.

Lester J. RICHARDS, et al., Appellants,

v.

Mary F. LILES, et al., Appellees.

No. 80–649.

District of Columbia Court of Appeals.

Argued May 20, 1981.

Decided Aug. 27, 1981.

---

David L. Scull, Chevy Chase, Md., for appellants.

Florence R. King, Washington, D.C., for appellees.

Before KELLY, MACK and PRYOR, Associate Judges.

KELLY, Associate Judge:

This contest over the estate of Roscoe Liles presents the question of the effect divorce has upon a will executed during marriage which devises all property to the testator's former spouse. The trial court granted summary judgment in favor of appellee, the former wife, and ordered the challenged will admitted to probate. We hold that the divorce and accompanying court-ordered division of property revoked by implication the previously executed will, so that Roscoe Liles died intestate. Therefore, we reverse.

I

Roscoe H. Liles and Mary F. Liles were married on February 24, 1945, in Cheyenne, Wyoming. They had no children. On November 2, 1972, Roscoe Liles executed a Last Will and Testament, leaving all of his property and estate to his "Beloved Wife, Mary F. Liles ... if she survives me." In the event he is not survived by his wife, the will names as contingent beneficiaries five nieces, two nephews, a brother-in-law, a sister, two brothers, his wife's grandmother, his mother-in-law, father-in-law, and two sisters-in-law.

Three years later, On October 23, 1975, Mary Liles left the marital home, following threats of bodily harm made by decedent. According to the findings of fact accompanying the judgment of divorce, her absence soon ripened into a mutually agreed upon voluntary separation. In December of 1976, Mary Liles filed a complaint in Superior Court seeking an absolute divorce and a division of property. Although decedent was personally served with a summons in

that action, he failed to answer or plead, and the court appointed counsel to enter an appearance on his behalf. Counsel was able to contact decedent by phone. However, decedent failed to keep an appointment with counsel, and did not appear at the hearing on the complaint for divorce. On September 23, 1977, the court awarded Mary Liles an absolute divorce and divided in half property the couple had accumulated during their thirty years of marriage.

As of August 1978, decedent had not yet complied with the part of the decree requiring a sale of the couple's home (where decedent was then living) and division of the proceeds, and so Mary Liles sought a court order of enforcement. Decedent personally appeared at the hearing on the order, raised no objections, and agreed to comply. Six weeks later he died.

In October 1978, Mary Liles petitioned for probate of the will executed November 2, 1972, and issuance of Letters of Administration, c.t.a. Appellants, who are decedent's two brothers and one sister, brought an action on November 28, 1978, naming as defendants Mary Liles and the other contingent beneficiaries,[1] seeking to prevent probate of the will and challenging the right of Mary Liles to serve as Administratrix of Roscoe Liles' Estate. Both sides moved for summary judgment, and the court, on April 9, 1980, held the will had not been revoked and was to be admitted to probate, but that Mary Liles was not to serve as Administratrix. This appeal involves only the part of the decision that holds the will was not revoked.

## II

Under common law and ecclesiastical law it was recognized that certain changes in

the status or domestic relations of a testator would revoke a prior will, or at least support an inference of an intention to revoke. 2 W. Bowe & D. Parker, Page on Wills § 21.86 (1960). *Pascucci v. Alsop*, 79 U.S.App.D.C. 354, 147 F.2d 880, *cert. denied*, 325 U.S. 868, 65 S.Ct. 1406, 89 L.Ed. 1987 (1945), held the common-law rule in the District of Columbia is that marriage and the birth of issue, taken together, amount to an implied revocation of a previously executed will of the husband and father.[2] In *Luff v. Luff*, 123 U.S.App.D.C. 251, 359 F.2d 235 (1966), the circuit court rejected the argument that the circumstances in which there is revocation by implication of law must be limited to those found in early common law decisions. *Id.* at 253, 359 F.2d at 237. The court, adopting the majority rule, went on to hold that a divorce and property settlement revoked a previously executed will which provided that the testator's entire estate should pass to his then wife.

In the instant case, the trial court distinguished *Luff v. Luff*, which is binding on this court under the rule of *M.A.P. v. Ryan*, D.C.App., 285 A.2d 310, 312 (1971), on the ground the Liles' property was divided by the court, rather than by voluntary agreement of the parties. Therefore, the trial court reasoned, there was no voluntary act by the decedent which reflected an intention to revoke the will. We do not read the holding of *Luff* so narrowly.

In this context, to treat differently a property settlement agreed to by the parties, and a division of property made by the divorce court, would be to rest a decision of great import on an artificial distinction.

---

1. Appellants are among those named in the challenged will as contingent beneficiaries. However, if they are correct that the will was revoked by implication, and decedent died intestate, they are entitled to equal shares of his estate. D.C.Code 1973, § 19–310.

2. An earlier case, *Morris v. Foster*, 51 App.D.C. 238, 278 F. 321, *cert. denied*, 259 U.S. 582, 42 S.Ct. 586, 66 L.Ed. 1074 (1922), had been decided under the assumption District of Columbia law did not permit revocation of a will by

implication. The court in *Pascucci* reconsidered that holding, and, tracing the authorities back to the law of wills and probate existing in Maryland on February 27, 1801, which became the common law of the District of Columbia, *Clawans v. Sheetz*, 67 App.D.C. 366, 368, 92 F.2d 517, 519 (1937), concluded that revocation by implication of law was an established doctrine at that time, and was not within the statute of frauds, *Pascucci v. Alsop, supra* 79 U.S. App.D.C. at 355, 147 F.2d 881.

Whether the parties are able themselves to agree upon a fair division of their wealth, or whether they must rely on the court to do so, the ultimate result is that their material obligations to each other have been settled. We perceive no serious rationale for treating this case any differently than the *Luff* case, and so hold the doctrine of implied revocation, which has since been explicitly recognized by statute, *see* D.C. Code 1973, § 18–109, applies where there has been a divorce and division of property by the court.

■ Furthermore, we reject appellee's assertion that because the divorce was ultimately obtained through the initiative of Mrs. Liles, there was no voluntary act by decedent from which we can refer an intent to revoke his previously executed will. Decedent's response to the institution of divorce proceedings was inaction. However, the divorce was granted on the ground of voluntary separation for one year. Implicit in the decree is decedent's voluntary disassociation from his former wife,[3] and therefore the grant of divorce was not based solely upon her actions.

As the *Luff* opinion states, the basis for the doctrine of implied revocation of a will is that there has been "such a change both in status and responsibility as to raise the presumption of change in intention." *Luff v. Luff, supra* 123 U.S.App.D.C. at 255, 359 F.2d at 239. Although there may be testators who, following divorce and division of property, still intend to bequeath property to a former spouse, as the circuit court held, once they have divorced and settled their respective rights in each other's assets, if they intend to make additional provision, "the law should require this to be done anew in a manner provided by statute for valid testamentary disposition." *Id.* at 255, 359 F.2d at 239.

■ This is not an issue which lends itself to case-by-case determination. *Caswell v. Kent*, 158 Me. 493, 186 A.2d 581 (1962) (under statute, will is revoked automatically, not presumptively, upon divorce and property settlement). In some states the presumption of revocation of a testamentary gift to a spouse after divorce and property settlement may be rebutted with evidence that the testator did not intend to deprive the former spouse of the bequest. *See, e.g., In Re Estate of Mercure*, 391 Mich. 443, 216 N.W.2d 914 (1974); Annot., 71 A.L.R.3d 1297, 1311 (1976). However, we consider that approach inappropriate. In the interests of certainty and to avoid unnecessary litigation, we hold that the presumption of revocation of a will in favor of a former spouse that arises with divorce and property settlement is to be conclusive. By doing so, we adopt the majority rule, which

> rests on the assumption based upon common knowledge and experience that it is so rare and so unusual for a testator under these circumstances to desire or intend that his divorced spouse should benefit further under his will, that it is not improper or unreasonable to require that such a testator make that extraordinary desire and intention manifest by a formal republication of his will or by the execution of a new will. [*Caswell v. Kent, supra* 158 Me. at 494–96, 186 A.2d at 582–83.]

### III

■ The contingent beneficiaries, as appellees, urge that if the bequest to Mary Liles is revoked by the divorce and property distribution, then they are entitled to receive their contingent shares of the estate. This is not so. The rights of the contingent beneficiaries are dependent upon (1) the writing being a valid testamentary instrument, and (2) Mary Liles predeceasing Roscoe Liles. Neither condition was satisfied.

---

**3.** At the time Mary Liles instituted her complaint for divorce, the statutory period for voluntary and mutual separation was one year. *See* D.C.Code 1973, § 16–904(a). Although the D.C.Code provisions on divorce were substantially amended in 1977, *see* D.C.Code 1978 Supp., § 16–904(a)(1), and the statutory period for mutual and voluntary separation is now six months, the divorce was granted on the ground of voluntary separation, which requires voluntariness on the part of both parties. *See Rzeszotarski v. Rzeszotarski*, D.C.App., 296 A.2d 431, 437 (1972).

We recognize that under the Uniform Probate Code, § 2–508, where a will is revoked by implication after a divorce, property prevented from passing to the former spouse "passes as if the former spouse failed to survive the decedent." However, that section is not part of the law in the District of Columbia. It was considered by the City Council but not adopted. *See* Bill No. 2–61, January 24, 1977, 123 D.C. Reg. 5542–5788 (February 4, 1977). The drastic change in the decedent's circumstances, which occurred between execution of the document in 1972, and his death in 1978, revoked in its entirety the instrument naming Mary Liles as primary beneficiary. Therefore the decedent's estate passes as if he died intestate, and not as if Mary Liles predeceased him. The disposition urged by appellees would be inconsistent with the implication of changed intentions upon which the revocation is based.

For the foregoing reasons, we hold the writing dated November 2, 1972, cannot be admitted to probate as the Last Will and Testament of Roscoe Liles, and that he died intestate. Therefore, the judgment appealed from is

*Reversed.*