James and Jocelyn BOLLE as Co–Personal Representatives of the Estate of Christopher Bolle and Susanna Thayer Bolle, Appellants,

v.

Jeffery Elizabeth HUME, Appellee.

No. 91–CV–1448.

District of Columbia Court of Appeals.

Argued Nov. 25, 1992.
Decided Feb. 12, 1993.

---

Warren K. Kaplan, with whom Pamela L. Sherman, Washington, DC, was on the brief, for appellants.

Linda J. Ravdin, Washington, DC, for appellee.

Before SCHWELB and FARRELL, Associate Judges, and MACK, Senior Judge.*

PER CURIAM:

This action was brought by appellants Susanna Bolle and the Estate of Christopher Bolle, to determine the lawful beneficiary of Christopher Bolle's life insurance benefits. The trial court granted summary judgment to appellee Jeffery Elizabeth Hume, the divorced wife of the decedent. We affirm.

## I.

Decedent Christopher Bolle (Bolle) and appellee Jeffery Hume (Hume) were married in 1980 and separated in 1986. In November 1986, having been recently employed as an associate in a Washington, D.C. firm, Bolle executed a "Jones, Day, Reavis & Pogue Flexible Benefits Program Enrollment Form" (Beneficiary Form) under his new employer's insurance program, naming Hume as primary beneficiary, and his sister Susanna, as secondary beneficiary. One year later, on November 9, 1987, Bolle and Hume entered into a Property Settlement and Separation Agreement (Agreement) which addressed, *inter alia,* the property rights and spousal support obligations of the marital relationship. In particular, the Agreement provided that Bolle would purchase Hume's interest in a jointly-owned condominium for $4,192.18, and assume responsibility for all associated payments. In addressing this last concern, the parties initially proposed that Bolle "obtain mortgage or credit life insurance covering the outstanding balance due on the deed of trust on the property to take effect upon the conveyance of the property to the Husband ... for so long as Wife is jointly liable with the Husband on said deed of

trust." Concerned that mortgage or credit life insurance would prove too costly, Bolle, on his own initiative, deleted this last provision. Under cover of separate correspondence, the parties agreed to substitute Bolle's life insurance, to which Hume was already the beneficiary, to cover any potential obligations.

In addition, the Agreement contained clauses: (a) waiving additional claims; (b) integrating the agreement; and (c) binding the agreement on all heirs and assigns. Significantly, no reference is made to life insurance policies and any potential benefits therefrom.

Five months following the execution of the Agreement—on April 8, 1988—an order of the Superior Court entered a judgment declaring Hume and Bolle to be divorced. On that very day, Bolle completed another Beneficiary Form wherein he again designated Hume as primary beneficiary, and his sister, Susanna Bolle, as alternate. In May 1990, Bolle died suddenly, leaving insurance proceeds totalling $440,000. Upon his death, appellants brought this action, requesting a declaratory judgment that the estate was entitled to $82,551.53 from the insurance proceeds to pay off the existing deed of trust balance, and that a constructive trust be imposed on the balance of the proceeds in favor of Susanna Bolle, the alternate beneficiary.

## II.

■ Superior Court Civ.R. 56(c) requires a trial court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In reviewing a trial court's granting of a motion for summary judgment, our standard is identical to that applied by the trial court when considering the motion in the first instance. *Government Employment Ins. v. Group Hospital,* 602 A.2d 1083,

---

* Senior Judge Mack, who has reviewed the briefs and record in this case, and who has heard oral argument on tape, has replaced Senior Judge Pryor on this division.

1086 (D.C.1992) (citing *Holland v. Hannan,* 456 A.2d 807, 814 (D.C.1983)). This court must, therefore, initiate an independent review of the record to determine whether "any relevant factual issues exist," *Graff v. Malawer,* 592 A.2d 1038, 1040 (D.C.1991), keeping in mind that "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

■ When applying this standard to contracts, such as the Separation Agreement in this case, summary judgment is inappropriate where the measure of the instrument hinges on the credibility of extrinsic evidence or on a selection between potential inferences to be drawn from such evidence. *Holland v. Hannan, supra,* 456 A.2d at 815. However, summary judgment *is* proper "where a contract is unambiguous since, absent such ambiguity, a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence." *Id.* (citations omitted). Having reviewed the record, we are satisfied that the trial court was correct in its holding that "no [impartial] fact finder, resolving disputed facts in favor of plaintiffs, could [reasonably] find that there is sufficient evidence of decedent's intent to alter that expressed in his insurance designation form."

### A. *Separation Agreement*

■ "Under District of Columbia law, where a separation agreement is fair and reasonable and is intended as a final disposition regarding property rights or adult support, the parties will be bound by the agreement." *Swift v. Swift,* 566 A.2d 1045, 1046 (D.C.1989) (citing *Spencer v. Spencer,* 494 A.2d 1279, 1285 (D.C.1985)). Appellant urges that the trial court erred in not considering the extraneous documentation and conversations which purport to reflect the decedent's true intentions. In particular, appellant sought the introduction of several communications exchanged prior to the execution of the Agreement including: (a) a letter of June 3, 1987, from Hume to her counsel articulating her agreement with Bolle wherein he was to purchase her share in the condominium and obtain mortgage or credit life insurance to secure her indemnification in the event of death or bankruptcy; (b) a draft Agreement; (c) a letter dated August 21, 1987, between the parties' counsel stating Bolle's desire to substitute a portion of his life insurance in lieu of obtaining mortgage or credit life insurance; (d) a telephone conversation between Hume and Bolle in which Bolle agreed to make Hume his beneficiary of his life insurance to protect her from any potential liability arising out of the condominium; (e) a letter dated September 24, 1987, between counsel stating that the parties had reached a settlement.[1] To determine whether such parol evidence is admissible, we begin our inquiry mindful that

> if the contract was not a completely integrated instrument, additional assurances and promises made by one party to another during their negotiations are surely relevant if the trier of fact is to understand the entire arrangement. If, on the other hand, the parties intended the written contract to settle everything, such promises and assurances have far less, if any, significance.

*Hercules & Co. v. Shama Restaurant Corp.,* 613 A.2d 916, 927 (D.C.1992). A determination whether a contract was not integrated, partially integrated, or completely integrated, depends upon the intent of the parties at the point of contracting. *See Howard Univ. v. Good Food Servs.,* 608 A.2d 116, 126 (D.C.1992). Our initial focus, therefore, must be on the four corners of the document in question, for "language should be relied upon as providing the best objective manifestation of the parties' intent," *1010 Potomac Assocs. v. Gro-*

---

1. In rebuttal, appellee introduced, *inter alia,* the deposition of Hume in which she testified that Bolle had assured her "Don't worry, you will be beneficiary of my life insurance. That will cover any liability that you might have, it will be more than enough for you."

*cery Mfrs. of Am., Inc.,* 485 A.2d 199, 205 (D.C.1984).

 The only reference to the jointly held property is found in Article V. Article V(A) refers to the $4,192.18 payment Bolle was to make to purchase Hume's interest. Article V(B) provides:

> Husband shall be solely responsible for all payments for mortgage, interest, taxes, insurance, repairs and maintenance, and all other payments or obligations associated with the property from the date of separation forward and shall indemnify the Wife and hold her harmless from any liability for said payments or obligations.

In addition, Article X of the Agreement provides that

> The parties hereby release each other from any past or present claims of any nature which either may have against the other, except as expressly set forth in this Agreement. This waiver expressly includes ... all other similar or related rights.[2]

Similarly, the merger clause found in Article IX(A),[3] clearly evidences the parties' intention to enter into a completely integrated contract and is supported by Article IX(B)'s provision that "[e]ach party has carefully reviewed this Agreement ... [and] represents that he or she understands the meaning of the various provisions of this Agreement, and that the text does set forth the Agreement in the manner they had intended."

In reading the Agreement as a whole "giving reasonable, lawful and effective meaning to all its terms," *1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc., supra,* 485 A.2d at 205 (citations omitted), we find the parties' intentions clear, unambiguous and not "reasonably or fairly susceptible of different constructions or interpretation, or of two or more different meanings," *Holland v. Hannan, supra,* 456 A.2d at 815 (citations omitted).[4] Accordingly, "no evidence may be introduced of prior agreements or terms, whether consistent or inconsistent, within the scope of the written agreement." *Ozerol v. Howard University,* 545 A.2d 638, 642 (D.C.1988). The trial court, therefore, correctly refused, as a matter of law, to consider the extraneous correspondence in interpreting the provisions of the Agreement.

## B. *Beneficiary Form*

 In addressing appellant's request that a constructive trust be placed on all remaining proceeds of Bolle's estate, we first note that appellant's election of a constructive trust as a remedy in wholly inappropriate. Generally, a constructive trust is an appropriate remedy for combatting unjust enrichment. *See* D. DOBBS, LAW OF REMEDIES § 4.3 (1973); G. BOGERT, TRUSTS AND TRUSTEES §§ 77 *et seq.* (6th ed. 1987); V. SCOTT ON TRUSTS §§ 461 *et seq.* (1989). While appellant is correct that for this court to employ this remedy, the inequitable conduct in question need not rise to level of actual fraud, *Hertz v. Klavan,* 374 A.2d 871, 873 (D.C.1977), we will apply it

---

**2.** While this provision might arguably negate the original November 1986 designation of beneficiary form, our decision in *Estate of Bowden v. Aldridge,* 595 A.2d 396, 397 (D.C.1991) (citing *Mayberry v. Kathan,* 98 U.S.App.D.C. 54, 55, 232 F.2d 54, 55 (1956)), makes it clear that general expressions of divestiture are not to be construed to include a renunciation of expectancies. Thus, absent a clear intent to the contrary, a beneficiary retains his status pursuant to the proceeds of an insurance policy. Moreover, when construing the Beneficiary Forms, we focus primarily on the form executed in April 1988, well after the signing of the Agreement. Any mention of the initial Beneficiary Form is merely for emphasis, reinforcing Bolle's intention that he intended Hume to be his primary beneficiary.

**3.** The parties intend this Agreement to set forth their present understanding in its entirety. There area no written or oral promises between them which they presently wish to exchange but have excluded from this text. No modification or waiver of any of the terms of this Agreement shall be valid unless in writing and executed with the same formality as this Agreement....

**4.** Moreover, we will not find an ambiguity which is not here, "merely because parties do not agree on proper interpretation of contract provision." *Sacks v. Rothberg,* 569 A.2d 150, 154–55 (D.C.1990).

"for the purpose of preventing humans from being successful in shady bits of behavior." *Id.* (quoting 4A POWELL ON REAL PROPERTY ¶ 594, at 567 (1974)). In *Hertz,* this court imposed a constructive trust where the appellant guilefully obtained his ninety-four-year-old aunt's signature on a deed to her house conveying the property to him. At the time she signed the instrument, the aunt was in the hospital facing imminent death, and she could neither read nor write English. Moreover, the property had previously been designated as part of an estate to provide scholarships for orphans overseas. *See also Gray v. Gray,* 412 A.2d 1208 (D.C.1980); *Harrington v. Emmerman,* 88 U.S.App.D.C. 23, 186 F.2d 757 (1950); *Mandley v. Backer,* 73 App. D.C. 412, 121 F.2d 875 (1941). Here, there is no evidence that Hume acquired her right to the life insurance proceeds by guile, deceit or subterfuge.

Furthermore, appellant's argument fails as a result of the clear language of Bolle's insurance designations. On two separate occasions—November 29, 1986 and April 8, 1988—Bolle, an attorney, filled out beneficiary forms. On the latter occasion, he designated "Jeffery Hume Bolle (a.k.a. Jeffery Elizabeth Hume)" in the space provided for "Name of Primary Beneficiary." In the space provided for "Secondary Beneficiary," he designated "Susanna Thayer Bolle." He left blank both the space following the caption "Special Provisions" and the space provided for any assignation of "Change of Beneficiary." No other beneficiaries were named, nor were any other additions made.[5] Therefore, given that Hume was unequivocally designated beneficiary, "her right to take is protected unless there is convincing evidence" to the contrary. *Mayberry v. Kathan, supra,* 98 U.S.App.D.C. at 55, 232 F.2d at 55. Notwithstanding these stipulations, appellant urges that the trial court erred for failing to consider "Bolle's intent and motive when

he executed the designation of beneficiary on April 8, 1988, his feelings at the time toward his wife and the break-up of their marriage, and his expressed intent to leave everything to his sister."

■■■ "An insurance policy as issued and accepted is prima facie the contract of the parties." *Penn Mut. Life Ins. Co. v. Abramson,* 530 A.2d 1202, 1210 (D.C.1987) (quoting 13A J. APPLEMAN & J. APPLEMAN, INSURANCE LAW AND PRACTICE § 7608, at 304 (1976)). As the policy is a legally enforceable agreement, once again our inquiry requires the application of the parol evidence rule to the "objective law" of contracts. *See Howard University v. Best,* 484 A.2d 958, 967 (D.C.1984). While the beneficiary form lacked any explicit merger clause, where the contract is one of insurance, the commentators are unanimous in their position that the contracts are to be construed as integrated. *See* 19 COUCH ON INSURANCE 2D (Rev. ed.) § 79:126, at 101 (1983): "The applicability of the parol evidence rule to the contract of insurance is sometimes stated in terms of an irrebuttable presumption, namely, that when a policy of insurance, properly executed, is delivered and accepted, it must be conclusively presumed to contain all the terms of the agreement for insurance by which the parties intended to be bound, and therefore, to be the final form of their binding agreement." *See also* 13 APPLEMAN, INSURANCE LAW AND PRACTICE § 7385, at 134 (1976). "[I]f a policy is plain and unambiguous, the court will construe it without reference to any acts or conduct of the parties thereto which evince their interpretation of such contract."[6] As such, "[t]he intent of the parties as expressed in their contract is controlling and parol evidence is not admissible to show an intention contrary to that expressed in an unambiguous written contract." 19 COUCH ON INSURANCE 2D (Rev. ed.) § 79:129, at 105. "An intent different

---

5. Except where Bolle placed an asterisk with the remark "divorce proceedings pending" next to the box marked "Married."

6. Moreover, we have held that where a party to an agreement signs or otherwise manifests assent to a writing and has reason to believe that

like writings are regularly used to embody terms of agreements of the same type, he adopts the writing as an integrated agreement. *Hercules & Co. v. Shama Restaurant Corp., supra,* 613 A.2d at 928 n. 18 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 211(1)).

from that clearly expressed in the application and policy cannot be established by parol so as to modify the interests of the beneficiaries as so stated." *Id.*

 This position is reinforced in this jurisdiction by this court's reluctance to look behind the clearly unambiguous language of a life insurance contract. Where a party seeks to reform a designation of beneficiary, we have held that "as the law of this jurisdiction presently stands, for a change-of-beneficiary designation to be effective, if not strictly in compliance with the terms of the policy, it must be evidenced in some form of writing." *Penn Mut. Life Ins. Co. v. Abramson, supra,* 530 A.2d at 1211 (citations omitted.) We followed *Cohn v. Cohn,* 84 U.S.App.D.C. 218, 171 F.2d 828 (1948), *cert. denied,* 336 U.S. 962, 69 S.Ct. 892, 93 L.Ed. 1114 (1949), in which the court of appeals was faced with conflicting evidence whether a policy naming the parents of a deceased naval officer was changed to name his wife. There, the court held that "any change in the formally designated beneficiaries of these policies be evidenced by some *unmistakable proof* that the decedent did actually make the change." *Id.* at 220, 171 F.2d at 830 (emphasis supplied). More recently, in *Estate of Bowden v. Aldridge, supra,* an action brought to determine the lawful beneficiary of life insurance benefits and other funds, we held that "a separation and property agreement does not divest a former spouse of her interest as a designated beneficiary absent *'convincing evidence'* that it was intended to deprive the named beneficiary of that interest" (citing *Mayberry v. Kathan, supra* note 2, 98 U.S.App.D.C. at 55, 232 F.2d at 55 (emphasis supplied)). Here, the trial court correctly declined to admit the parol evidence which would have altered the plain reading of the beneficiary form. We, therefore, need not reach the question whether or not the evidence rose to the level of "convincing" or "unmistakable."

## C. *Revocation by Implication of Law*

 Appellant finally urges this court to extend the rationale in *Estate of Liles,* 435 A.2d 379 (D.C.1981) to include present situation. In *Liles,* we held that under the doctrine of revocation by implication of law, D.C.Code § 18–109(a) (1989), a divorce automatically revokes any existing will's bequest to the former spouse, regardless of the actual intent of the testator. This adopted rule, we noted

> rests on the assumption based upon common knowledge and experience that it is so rare and so unusual for a testator under these circumstances to desire or intend that his divorced spouse should benefit further under his will, that it is not improper or unreasonable to require that such a testator make that extraordinary desire and intention manifest by a formal republication of his will or by the execution of a new will.

*Estate of Liles, supra,* 435 A.2d at 382 (quoting *Caswell v. Kent,* 158 Me. 493, 186 A.2d 581, 582–83 (1962)).

Even assuming that the analogy between the testamentary disposition of property and the designation of beneficiary rights for insurance proceeds were apt, we would have to construe Bolle's redesignation of Hume on the very day the Superior Court entered the Judgment of Absolute Divorce as reflecting a manifest intent that Hume be the ultimate recipient of those proceeds.[7] Accordingly, we decline to extend the revocation by implication doctrine to the situation before us.

*Affirmed.*

7. D.C.Code § 16–920 (1989) provides that "... an absolute divorce shall not become effective until the time for noting an appeal [30 days] shall have expired...." While technically the divorce between the parties was not final until May 8, 1988, our result is the same. The doctrine of revocation by implication of law seeks to discharge the intent of the deceased. Here, that intent is evident by Bolle's reaffirmation of Hume as primary beneficiary on the day the court entered its judgment and will not be overturned due to a hypertechnical interpretation of the statute.