In re ESTATE OF Norah Boyle REAP, Mary B. Reap, Personal Representative of the Estate of John R. Reap, III, Appellant,

v.

J. Kevin MALLOY, Personal Representative of the Estate of Anastatia McG. Malloy, Appellee.

No. 97–PR–461.

District of Columbia Court of Appeals.

Argued June 4, 1998.

Decided April 1, 1999.

Michael F. Curtin, with whom Mark S. Carlin, Laurence E. Salans, and Kala Shah, Washington, DC, were on the brief, for appellant.

Bernard T. Thabault, Washington, DC, for appellee.

Before WAGNER, Chief Judge, and SCHWELB and FARRELL, Associate Judges.

FARRELL, Associate Judge:

This appeal arises from a dispute over whether the decedent, Norah Boyle Reap, died intestate because her will, executed during her marriage to John R. Reap, III, was impliedly revoked by their subsequent divorce and property arrangement, as well as his remarriage. The trial judge granted summary judgment to Norah's aunt (and challenger of the will), Anastatia McG. Malloy, and denied summary judgment to Mr. Reap.[1] Mary B. Reap, personal representative of John R. Reap, III, appeals these decisions. We reverse the grant of summary judgment and remand for trial on the issue of whether the Reaps had a property settlement agreement at the time of their divorce.

**I.**

The Reaps were married on January 17, 1970, separated in the summer of 1982, and divorced on May 3, 1991. John's complaint for divorce asserted in part that "[t]here are no property rights to be adjudicated between the parties." Norah's answer agreed, and they executed a praecipe that the divorce was "uncontested as to all matters." The divorce judgment echoed the above-quoted language from John's complaint. John remarried before Norah died.

Norah had executed a will in 1976 naming John and two others as beneficiaries. She never modified the will. In December 1992, John was appointed the personal representative of Norah's estate, and her will was admitted into probate. Anastatia, Norah's closest living relative, filed a complaint challenging the will, alleging that it had been revoked by implication of law pursuant to D.C.Code § 18–109 (1997) when the Reaps divorced in 1991.

John and Anastatia filed cross motions for summary judgment. Although they agreed about most material facts, including that the Reaps had not entered into a written property settlement agreement upon their divorce, they disputed whether the couple had reached an oral agreement. As evidence, Anastatia pointed to John's representation to the court that no property rights had to be adjudicated, and to a 1993 claim that John had filed against Norah's estate for waste, in which he referred *inter alia* to the parties' "understanding that [Norah] would reside in the premises and maintain the property." Attached to John's motion, by contrast, was his affidavit explaining the Reaps' amicable and flexible relationship during their nine-year separation and later divorce.[2] He asserted that, although the Reaps had lived apart starting in 1982, their lives remained intertwined; consequently, they never "finally settle[d] [their] respective rights in [their] marital property" but instead continued to share some property and individually use other jointly-held property. "At the time of our divorce," John concluded, "we agreed not to divide our marital property. We had been separated for nine years and comfortably shared our property with each other. Because we did not want to determine which property would belong to Norah or to me individually, we did not enter into any property settlement agreement or ask the court to divide our property."

The trial judge granted Anastatia's summary judgment motion on three grounds. First, while admitting that the Reaps had not contested their property rights in the divorce proceeding, he found that the divorce complaint and answer stating that there were no

---

1. While the summary judgment motions were pending, both Ms. Malloy and Mr. Reap died. Their estates' personal representatives, J. Kevin Malloy and Mary B. Reap, respectively, were substituted as proper parties.

2. Through all or part of that period, the Reaps had maintained joint checking and charge accounts and joint insurance on the marital home, and until their divorce Norah was covered under John's health insurance. John lived in the marital home for two years, then traded off with Norah. Most of the furniture and other personal property was left in the house and not divided, according to John, although he sometimes dropped by to pick up items such as bottles of wine from their shared collection.

property rights to be adjudicated "evidence[d] such a[ ] [property] agreement." This inference also was based on D.C.Code § 16–910 (1997), which the judge read to mandate court assignment and distribution of all marital property unless there is a property settlement agreement. He reasoned that because the divorce judge was required to distribute any unassigned marital property, and had not done so, the Reaps must have reached an agreement. Second, the judge found that, in view of John's earlier representation to the court that there were no property rights to be adjudicated, John was collaterally estopped from asserting that the property rights had not been settled. Finally, even if the first two grounds failed, the judge ruled that John's divorce and subsequent remarriage were sufficient changed circumstances to revoke Norah's will, since it was "highly unlikely" that Norah would have wanted John's new wife to receive any benefits from her estate in the event John predeceased his current wife.

## II.

We agree with appellant that summary judgment was improperly granted to Anastatia, but conclude that the critical material fact in the case—whether there was a property settlement—remains in dispute. We therefore remand for trial on that issue.

## A.

▮ Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Super. Ct. Civ. R. 56(c) (1998); *Hendel v. World Plan Executive Council,* 705 A.2d 656, 660 (D.C.1997). The evidence must be viewed in the light most favorable to the nonmoving party, who is entitled to "all favorable inferences which may reasonably be drawn from the evidentia-ry materials." *Id.* (citation omitted). In essence the test, like that for a directed verdict, is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On appeal from summary judgment, we conduct an independent review of the record using the same substantive standard employed by the trial court. *Hendel,* 705 A.2d at 660.

## B.

▮ D.C.Code § 18–109 provides that a will may be revoked by implication of law.[3] The doctrine applies when there has been a change in the condition and circumstances of the parties significant enough to impute to the testatrix an intent to repudiate. *See Luff v. Luff,* 123 U.S.App. D.C. 251, 253, 359 F.2d 235, 237 (1966); 2 WILLIAM J. BOWE & DOUGLAS H. PARKER, PAGE ON WILLS § 21.87 (1960 & Supp.1999). As the trial judge recognized, divorce alone of the testator (or testatrix) is not enough in this jurisdiction to cause revocation of the will by implication; the spouses must have "settled their respective rights in each other's assets," *Estate of Liles,* 435 A.2d 379, 382 (D.C.1981), and thus the divorce must be accompanied either by a "formally agreed property settlement" between the spouses, *Luff,* 123 U.S.App. D.C. at 252, 255 & n. 11, 359 F.2d at 236, 239 & n. 11, or by a division of their property rights by the court. *Estate of Liles,* 435 A.2d at 381–82; *see Estate of Bowden v. Aldridge,* 595 A.2d 396, 398 n. 6 (D.C.1991) ("[A] divorce and accompanying property division, whether by the court or agreement, automatically revokes any existing will's bequest to the former spouse" (citing *Liles* )).[4]

---

3. Section 18–109 states in relevant part:
     (a) A will or codicil, or a part thereof, may not be revoked, *except by implication of law,* otherwise than by . . . [a subsequent writing, or physical destruction with the intent to revoke it]. [Emphasis added.]

4. Citing language from *Bolle v. Hume,* 619 A.2d 1192, 1198 (D.C.1993) (per curiam), Anastatia argues that divorce alone is sufficient for revoca-tion, *see also* UNIF. PROBATE CODE § 2–508, 8 U.L.A. 154; § 2–804, 8 U.L.A. 217–18 (1998) (Divorce alone revokes a will.), at least as to the spousal beneficiary. These Uniform Code sections have not been adopted in the District of Columbia. *See Liles,* 435 A.2d at 383 (District of Columbia Council considered but did not adopt § 2–508); UNIF. PROBATE CODE, 8 U.L.A. 1 (1998) (listing jurisdictions wherein Code has been adopted).

The existence of a property settlement agreement or court division of the property is critical in this jurisdiction because, while in some other jurisdictions revocation by implication of law entails only a presumption that may be rebutted, in this jurisdiction it is conclusive:

It may not be overcome by evidence adduced subsequent to the death of the testat[rix] and then relied upon as indicative of an intention that the will should be effective. Inquiry into the state of mind of the testat[rix] is confined to that imputed to [her] by the divorce and property settlement.

*Luff,* 123 U.S.App. D.C. at 255, 359 F.2d at 239; *see Estate of Liles,* 435 A.2d at 382. Even more dramatically, the revocation is complete in that it applies to all of the beneficiaries, not just the other spouse: "the decedent's estate passes as if [s]he died intestate." *Estate of Liles,* 435 A.2d at 383. It therefore cuts off the testamentary rights of persons or entities having no relation to the divorce. These consequences no doubt underlie the requirement that, besides divorce, there must have been a "formally agreed property settlement" or court-ordered division, *Estate of Liles,* before implied revocation may be found.

### C.

The trial judge reasoned that the statement in the divorce pleadings that there were no property rights to be adjudicated, combined with the operation of D.C.Code § 16–910, established that the Reaps had settled their respective property rights as a matter of law. We think the judge erred. A statement that the parties are not submitting the matter of property rights for adjudication admits of two reasonable meanings. One is that the parties have formally settled their

respective rights in each other's assets, but the other is quite the opposite: that they have agreed not to disturb their present joint ownership of all or some of their property, in a manner consistent with their respective testamentary wishes. That the latter is at least a plausible understanding of the Reaps' intent is supported by John's affidavit stating that the Reaps did not want to divide their property but instead were content to go on sharing their possessions and obligations, *e.g.,* their house and charge and checking accounts, in keeping with the uncontentious nature of their years-long separation. A mutual understanding of this kind *not* to distribute their respective property rights plainly is not the final "settle[ment of] their respective rights in each other's assets," *Estate of Liles,* 435 A.2d at 382, required by our implied revocation decisions.

Nor does D.C.Code § 16–910 support a conclusion as a matter of law that a property settlement had been reached.[5] While the statute does appear to be binary in requiring assignment and distribution by the court *or* an agreement of the spouses "disposing [of] the property," that is certainly not conclusive proof that by eschewing the former the parties admitted they had a property settlement. Our case law is equivocal on the extent to which the divorce court's jurisdiction to divide property may be deferred. *See, e.g., Boyce v. Boyce,* 541 A.2d 614, 619 n. 10 (D.C.1988) (rejecting spouse's argument that "since a trial court is required by section 16–910 to distribute marital property upon divorce, there can be no distribution of assets in the future"); *Carter v. Carter,* 516 A.2d 917, 923 n. 16 (D.C.1986) (opining that trial court could have allowed continued possession of property by both parties for a reasonable period, with suspension of the unilateral

---

In *Bolle* the court's holding consisted of a refusal to extend the implied revocation doctrine to life insurance benefits. *Bolle's* brief general discussion of the doctrine cannot be taken as a considered re-analysis and rejection of *Luff, Liles,* and *Bowden* in their requirement of divorce plus property division before the doctrine is satisfied.

5. The statute provides in relevant part:
   Upon the entry of a final decree of ... divorce in the absence of a valid ante-nuptial or post-nuptial agreement or a decree of legal

separation disposing the property of the spouses, the court *shall:*
   (a) assign to each party his or her sole and separate property ... and
   (b) distribute all other property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entireties, in a manner that is equitable, just and reasonable .... [Emphasis added.]

right of partition). We need not probe that difficult issue here. The point is that the Reaps reasonably may have thought that their choices upon divorce were not limited to dividing their property themselves or having the court do so.[6] The understanding asserted in John's affidavit, whereby they continued to hold the property as though still married despite the separation and divorce, may be awkward to square with § 16–910 but it is not patently unlawful or so implausible that the court could draw from it, as a matter of law, the conclusion that the parties had settled their property rights once and for all.

Nor is the fact, emphasized by our dissenting colleague, that ordinarily a divorce dissolves a tenancy by the entirety and converts it to a tenancy in common, see *Travis v. Benson,* 360 A.2d 506, 509 (D.C.1976), at all decisive. As the dissent acknowledges, *ante* at 333, that principle is "subject to any agreement" to the contrary. An understanding of the kind asserted by John, whereby the spouses essentially treated the divorce as irrelevant to their continued joint ownership of the property, is not the settlement of their respective interests envisioned by the implied revocation doctrine because it is fully consistent with the continued efficacy of the testamentary disposition.

■ For the same reason, we reject the trial judge's finding of collateral estoppel based on the conclusion that by asserting that no property rights were to be adjudicated the Reaps necessarily meant they had made a property division themselves, which then somehow became part of the divorce decree. It cannot be said that by jointly seeking an uncontested divorce in which no property rights would be adjudicated, the parties "actually litigated," *Davis v. Davis,* 663 A.2d 499, 501 (D.C.1995), the issue of their respective rights in each other's assets. Additionally, summary judgment derives no support from the fact that John remarried before his ex-wife died. That *Norah's* testamentary intent changed as a result of *John's* remarriage is much too conjectural to substitute for the proof of divorce plus a property

settlement agreement required by our decisions.

■ Of course, the fact that summary judgment was improperly granted to Anastatia does not mean that it properly should have been granted to John. We reject John's primary argument that he was entitled to judgment because his affidavit provides the sole record evidence of whether the parties had a property settlement. Against the background of § 16–910, the parties' assertion on divorcing that no property rights were in dispute is some evidence that a factfinder could consider in concluding they had reached an agreement. But there was more. The record included John's written claim for waste against Norah's estate filed in July 1993, which requested $30,000 for half the cost of repairing damage assertedly caused by Norah's use of the marital home. It stated that John had left the marital home "with the understanding that [Norah] would reside in the premises and maintain the property"; and that "[c]ontinuously from 1982 until her death, [Norah] had total use, occupancy and enjoyment of the premises *to the exclusion of [John]* " (emphasis added). These assertions at least partly contradict John's representations in his affidavit. Combined with the ambiguous assertion in the divorce pleadings, they create a triable issue of fact on whether John and Norah had entered into a property settlement agreement at the time of their divorce.

We accordingly vacate the award of summary judgment and remand for trial on that issue.

*So ordered.*

WAGNER, Chief Judge, dissenting:

In my view, the undisputed facts of this case support the trial court's conclusion that the doctrine of implied revocation applies to revoke the decedent's will. *See* D.C.Code § 18–109. The rule has developed in this jurisdiction that a divorce and property settlement or a divorce and adjudication of the parties' property rights in the divorce action

---

**6.** We therefore disagree with the trial judge's view that it would have been "at best disingenuous and at worst untruthful" of John (in the judge's words) to assert that there was no property for the court to divide *unless* the spouses had divided it voluntarily.

impliedly revokes a will executed during the marriage in favor of the testator's former spouse. *Estate of Liles,* 435 A.2d 379, 381–82 (D.C.1981); *Luff v. Luff,* 123 U.S.App. D.C. 251, 253, 359 F.2d 235, 237 (1966). Under either theory, the will was revoked by implication in this case.

Here, the former husband, who was represented by counsel at the time, filed under oath a complaint for divorce from the testatrix in which he swore that there were no property rights to be adjudicated between the parties. The testatrix filed *pro se* a verified answer admitting the same. Relying on the parties' solemn declarations, the trial court made a finding to that effect, and accordingly, made no assignment of property rights as required by D.C.Code § 16–910. The clear implication is that the parties had either resolved any property claims among themselves or had none. Having been represented by counsel, the former husband must have known at the time that, upon divorce, the parties became tenants in common of their only jointly owned real property, as he later claimed. *See Travis v. Benson,* 360 A.2d 506, 509 (D.C.1976) ("entry of a final divorce decree dissolves the tenancy by the entirety and converts it into a tenancy in common"); [1] *see also Coleman v. Jackson,* 109 U.S.App. D.C. 242, 243–44, 286 F.2d 98, 99–100 (1960), *cert. denied,* 366 U.S. 933, 81 S.Ct. 1656, 6 L.Ed.2d 391 (1961). Thereafter, the incidences of ownership were governed by the nature of their interest as tenants in common, including any agreement with respect thereto, not by the incidences of their former marital relationship. Indeed, the former spouse later acknowledged that he and the testatrix had such an agreement.

The former husband asserted that he and the testatrix had a property settlement agreement in a pleading which he signed and filed with the court in an effort to obtain $30,000 from the textatrix' estate for waste she allegedly committed to his half interest in their former marital abode. Specifically, he stated in his signed pleading that the parties became tenants in common as a matter of law upon divorce and that "[u]nder an understanding between [himself] and the Decedent, the Decedent was to maintain and keep the property in reasonable condition so long as she resided in the property . . . ." He also asserted that he owned a fifty percent interest in the property, which would not necessarily have been the extent of the parties' interest if the determination had been left to the discretion of the divorce court rather than the parties' agreement. *See* D.C.Code § 16–910(b) (distribution of marital property by the court is to be made in a manner which is reasonable, equitable and just, considering various factors); *Gassaway v. Gassaway,* 489 A.2d 1073, 1075 (D.C.1985). The former husband's admission in his pleading provides significant evidence that he and the textatrix had a property settlement agreement. *See Wines v. Wines,* 291 A.2d 180, 182 (D.C.1972); *Smith v. Smith,* 256 A.2d 833, 836 (D.C.1969).

Finally, the divorce decree made no reservation of alimony to either spouse. Thus, both were relieved of any further support obligation to the other. *Carter v. Carter,* 473 A.2d 395, 397 (D.C.1984); *Jackson v. Jackson,* 200 A.2d 380, 382 (D.C.1964). All of these factors support the claim of the estate of the testatrix that the parties divorced and settled their respective property rights. A determination by the divorce court in a final decree, at the parties' behest, that there are no property rights for adjudication, does not differ in any meaningful way with a final adjudication assigning specific interests, particularly when coupled with evidence that the parties settled their property rights. "[T]o treat differently a property settlement agreed to by the parties, and a division of property made by the divorce court, would be to rest a decision of great import on an artificial distinction." *Liles, supra,* 435 A.2d at 381. As this court has stated "once [the parties] have divorced and settled their respective rights in each other's assets, if they intend to make additional provision, 'the law should require this to be done anew in a manner provided by statute for valid testamentary disposition.'" *Liles,* 435 A.2d at

---

1. In spite of the revisions to D.C.Code § 16–910, this principle, no doubt continues. *See Kleiman*

*v. Kleiman,* 633 A.2d 1378, 1381 n. 5 (D.C.1993); *see also* D.C.Code § 45–216 (1990).

382 (quoting *Luff, supra,* 123 U.S.App. D.C. at 255, 359 F.2d at 239).

Contrary to his sworn statements in the divorce action, the final decree of divorce, and his signed pleading making a claim for $30,000 against the decedent's estate, the former husband filed in the present action an affidavit in which he now claims that the parties never finally settled their respective rights. In support of this conclusory assertion, he points to the testatrix' use and occupation of the former marital property after the separation and subsequent divorce. This factor supports rather than dispels his earlier declarations of an agreement. That the testatrix remained in the property without his interference tends to show that the parties' agreement was performed in part. In any event, their continued ownership of the property as tenants in common created new incidents of ownership which allowed for her occupancy, subject to his right to occupy as well or to demand partition. These incidents of ownership do not arise out of the marital relationship and would exist even though the parties had settled their respective interests, subject to any agreement, of course. *See* D.C.Code § 16–2901. An essential characteristic of a tenancy in common is unity of possession, *i.e.,* "each tenant [in common] is entitled to possess the whole property and every part of the whole concurrently with every other tenant." *Second Realty Corp. v. Krogmann,* 98 U.S.App. D.C. 283, 285, 235 F.2d 510, 512 (1956); *Deming v. Turner,* 63 F.Supp. 220, 223 (D.D.C.1945). Both were entitled to the use and occupancy of the property, and each remained entitled to an accounting for "rents and profits of the property to his own use . . . ." D.C.Code § 16–2901(c). Thus, that the former wife occupied the property, to her advantage according to the former husband, is immaterial in determining whether their marital rights with respect to the property had been resolved. She had a right to occupy as a tenant in common, the status they took as a result of the positions they took in the divorce case, subject to his right to demand partition and an accounting or enforcement of the terms of any agreement.

Similarly, the former husband's claim that they carried insurance on the property in both names lends no support to his efforts to refute that they had no agreement for disposition of their property interests. As tenants in common, both had an insurable interest in the property; therefore, no significance attaches to this fact in determining whether they had, as previously claimed, settled their property rights.

The remaining evidence upon which the former husband relies in support of his claim that the parties had not resolved their property rights by agreement or as shown by the decree consists of a bank account and charge account listed in their joint names and some items of personalty in which he claims both retained an interest. Significantly, the former husband does not contend that he ever used or was authorized to use the charge account subsequent to the divorce or that he ever paid the bill. With respect to the bank account, he acknowledges that the testatrix stopped using it at an unspecified time, but he does not suggest that she retained or claimed any interest in the funds on deposit in the account after the divorce and their agreement was reached. Therefore, he has offered no support for his assertion that either account remained an unresolved property issue between the parties. Assuming that some few items of personalty remained in which the former spouses each claimed an interest, and the former husband has not so asserted, it would not be sufficient, in my opinion, to defeat the showing of the testatrix' heirs at law that the parties had an agreement resolving their major respective property rights arising out of the marriage such that revocation of the will was triggered under the statute. *See Berryman v. Thorne,* 700 A.2d 181, 183 (D.C.1997). The question is whether the divorce and final adjudication or agreement with respect to their interests "create[d] such a change both in status and responsibility as to raise the presumption of change in intention which lies at the basis of the doctrine [of implied revocation]." *Luff, supra,* 123 U.S.App. D.C. at 255, 359 F.2d at 239. Here, the resolution of their most significant property interests as shown by their sworn statements and the decree effected such a change.

Finally, absent a claim of fraud or mistake, the heirs of the former husband, and his privies, are bound by his sworn and unsworn statements to the court that the parties had an agreement with respect to their property interests which resulted in the court's decree that the parties had no property rights for adjudication. *See Major v. Inner City Property Mgmt., Inc.*, 653 A.2d 379, 381–82 (D.C. 1995). There is no claim of fraud or mistake here. For the foregoing reasons, the trial court properly granted summary judgment for the textatrix' estate. *See Berryman, supra*, 700 A.2d at 183. Therefore, I respectfully dissent from the opinion of the court.